1  **THE LAW OFFICE OF ROBERT L. STARR**
2  Robert L. Starr (183052)
   robert@starrlaw.com
3  Adam Rose (210880)
   adam@starrlaw.com
4  23901 Calabasas Road, Suite 2072
   Calabasas, CA 91302
5
6  Attorneys for Plaintiff
   Rebecca Casey, individually, and on behalf of a
7  class of similarly situated individuals

8              UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11 Rebecca Casey, individually, and on      ) NO. **'20 CV0299 WQHMSB**
   behalf of a class of similarly situated  ) CLASS ACTION
12 individuals,                             )
                                            ) COMPLAINT
13            Plaintiff,                     )
                                            ) 1. Violations of Business and
14       v.                                 ) Professions Code 17200
                                            ) 2. Fraud
15 General Motors, LLC.                     ) 3. Breach of Implied Warranty
                                            ) 4. Violation of Consumer Legal
16            Defendant.                     ) Remedies Act
                                            )
17                                          ) JURY TRIAL DEMANDED
                                            )
18                                          )
                                            )
19 _____  )

20

21

22

23

24

25

26

27

28

-1-

## INTRODUCTION

1. Rebecca Casey ("Casey") brings this action for herself and on behalf all persons in California ("Class Members") who purchased or leased model year 2013 through 2017 Buick Enclave, model year 2013 through 2017 Chevrolet Traverse, model year 2013 through 2016 Chevrolet Acadia, and model year 2017 Chevrolet Acadia Limited vehicles ("Class Vehicles") which were manufactured, distributed, and sold by General Motors, LLC, a Delaware Limited Liability Company (GM). GM is sometimes referred to as Defendant.

## PARTIES

**REBECCA CASEY**

2. Casey resides in California. On December 9, 2016, Casey purchased a used 2014 Buick Enclave, VIN 5GAKRBKDXEJ174753 ("Casey Vehicle") from Hoehn Buick, GMC, Cadillac (Hoehn), located at 5334 Paseo Del Norte, Carlsbad, California 92018. Hoehn is a GM franchise dealership, authorized by GM to perform warranty repairs and sell GM vehicles. Casey purchased the Casey Vehicle for personal, family, and household use. At the time of purchase, the Casey Vehicle had already been driven 70,657 miles.

3. Prior to Casey purchasing the Casey Vehicle, the Casey Vehicle was sold new on or about October 13, 2013. At the time that the Casey Vehicle was sold new, the Casey Vehicle came with a 4 year 50,000 basic warranty, a 6 year 70,000 mile powertrain warranty, a 7 year 70,000 California emissions warranty, an 8 year 80,000 mile federal emissions warranty for certain emissions  related components, and a 6 year unlimited mileage warranty for certain types of rust. Thus, at the time that Casey purchased the Casey Vehicle, the Casey Vehicle was still covered by portions of the original factory warranty.

**Defendant**

4.     GM is a limited liability company, organized and in existence under the laws of the State of Delaware and registered with the Secretary of State to conduct business in California. GM is and at all times herein relevant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components throughout the United States of America.

**JURISDICTION**

5.     This is a class action that is subject to the Class Action Fairness Act, and diversity jurisdiction under 28 USC § 1332 since plaintiff is a citizen of California, and GM is incorporated in Delaware, and the amount in controversy exceeds $5,000,000.

6.     At all times relevant, Casey resided in the county of San Diego, in the state of California.

7.     Casey purchased the Casey Vehicle in the county of San Diego, in the state of California.

8.     Due to the Casey Vehicle being purchased in San Diego, California, and due to Casey residing in San Diego, California, jurisdiction is proper in the Southern District.

**APPLICABLE LAW**

9.     California State law applies to all claims in this action.

**FACTUAL ALLEGATIONS**

10.     The Class Vehicles consist of all Class Vehicles sold or leased to consumers in California.

11.     The function of a fuse block in a vehicle is to distribute electrical energy from a source of the electrical energy, such as a vehicle's battery or power

-3-

generator (also referred to as an alternator) throughout the vehicle. The fuse block not only distributes electrical energy, but it acts as a gateway to the distribution of electrical energy, with fuses and relays controlling the flow of electrical energy throughout the vehicle. If there is a defect in the fuse block of a vehicle, the vehicle can experience either intermittent or total disruption of energy distribution. Such a defect could result in conditions including but not limited to the vehicle not starting, intermittently stalling, and exhibiting other malfunctions.

12.     The Class Vehicles are equipped with a fuse block located on the passenger side of the Class Vehicles, under the hood (Engine Bay Fuse Block). One of the functions of the Engine Bay Fuse Block is to provide electrical energy to different engine components using a relay (Engine Relay). The Engine Relay located in the Class Vehicles is mounted to the Engine Bay Fuse Block, and acts as a gateway for the flow of energy from the energy source, through the Engine Bay Fuse Block, to different engine components.

13.     The Engine Relay plugs into the Engine Bay Fuse Block much like a night light would plug into a power outlet on the wall of a home. The Engine Relay has metal prongs that stick out, which are plugged into a designated spot on the Engine Bay Fuse Block which is designed to accept Engine Relay (Engine Relay terminal). When the Class Vehicles are assembled, and if the Engine Bay Fuse Block later undergoes repair in order to install the Engine Relay, a technician merely takes the Engine Relay, with the metal prongs pointing at the top of the Engine Bay Fuse Block, and pushes the Engine Relay into the Engine Relay Terminal portion of the Engine Bay Fuse Block, again much like a person would plug a night light into a power outlet mounted on the wall of a home. If a technician wishes to remove the Engine Relay from the Engine Bay Fuse Block, the technician would pull the Engine Relay away from the Engine Bay Fuse Block, much like a person would unplug a night light from a power outlet on the wall of a home.

14.     In order for the Engine Relay to function properly, the Engine Relay Terminal must have adequate tension, so that when the Engine Relay is pushed into the Engine Relay Terminal, each of Engine Relay's metal prongs have a tight fit and are not loss. The tension referred to herein is much like the tension in a power outlet mounted on the wall in a home. A person can roughly measure the tension by feeling how much force is needed in order to plug something, again like a night light, into the power outlet.

15.     If there is not sufficient tension in the Engine Relay Terminal, resulting in the Engine Relay not fitting tightly into the Engine Relay Terminal, this can result in the Engine Relay being loose. This can result in intermittent or total loss of electrical power to the Class Vehicles' components which are provided with electrical energy by the Engine Relay.

16.     An intermittent loss of electrical power to the different engine components which are provided with electrical energy from the Engine Relay will often times cause Class Vehicles' engines to Stall, or experience other driveability related problems.

17.     If there is a lack of tension in the Engine Relay Terminal, causing the Engine Relay to be loose, then engine vibration in the engine bay, and the vibration in the engine bay that accompanies the Class Vehicles being driven, can cause the Engine Relay, which is already loose, to move around. This results in an intermittent loss of electrical power to the different engine components which are provided with electrical energy from the Engine Relay. This results in Class Vehicles' engines stalling while being driven. Engine stalling results in the loss of acceleration, the loss of power steering, the loss of power brakes, and several other very unsafe conditions. It is undeniable that if a Class Vehicle stalls while the Class Vehicle is being driven on the roadway, the stalling creates an extremely unsafe

and unacceptably dangerous condition for the occupants of the Class Vehicle, and the pedestrians and other vehicle occupants in the general vicinity.

18.    The GM Fuse blocks are mass produced, with an eye towards reducing the cost associated with the design, materials, and assembly of the fuse blocks.

19.    The functionality of a fuse block is critical to the safety of GM vehicles. This is because fuse blocks are used to distribute electrical power from a power source to a variety of safety related components, such as air bags, different engine components, the brakes, brake lights, headlights, etc.

20.    Typically the only way that a consumer becomes aware that a fuse block terminal does not have sufficient tension is when a vehicle experiences intermittent or total loss of electrical energy. Furthermore, when this occurs, it is often times not clear what is causing the intermittent loss of energy, making it difficult to diagnose the cause being the lack of sufficient tension at the fuse block terminal.

21.    For the herein stated reasons, it is critical that GM and other manufacturers design robust fuse blocks that are defect free. The failure of a fuse block clearly poses a safety hazard.

22.    For years, dating back prior to GM's assembly, distribution, and sale of the Class Vehicles, GM has known that there is a defect in the design, materials, and assembly of its fuse blocks, wherein the fuse block terminals lose tension, resulting in relays which are mounted on fuse blocks being loose (Fuse Block Defect).

23.    In February of 2013, GM published Service Bulletin PIP5094, with the subject being, "Prior To Any Circuit Testing." The model vehicles is indicated as "2014 and prior GM cars and light duty trucks." The instructions indicated, "When testing any circuit for open or continuity resistance, it is imperative that all related terminal pin fit and tension be check when the test steps require disconnection of

the connector or component, prior to any component replacement. Always use the recommended terminal test tool during these tests." The bulletin further states, "Additional SI Keywords:" after which point P1682 and P0689, among other things are listed. P1682 and P0689 are fault codes relating to engine function.

24.     On November 5, 2019, GM published Preliminary Information PIT5074M, entitled Terminal Test Probe Information/Repair. GM has published numerous other documents over the years, relating to the same matters set forth in the PIT5074M document. The model vehicle is indicated as, "All brand, all model 2005-2020." The Recommendations/Instructions indicates, "When diagnosing an intermittent electrical concern terminal tension is one of the main culprits, especially when working with very small terminals." The model year range dates back to 2005 and indicates that terminal tension is one of the main culprits in diagnosing an intermittent electrical concern. This information makes it clear that GM has been aware of terminal tension being very problematic for years predating the production and distribution of the Class Vehicles.

25.     On April 30, 2018, at 89,373 miles, Casey brought the Casey Vehicle to Hoehn, complaining that while driving on the freeway, after slowing down, the stability and traction warning illuminated, with a warning of reduced power. Hoehn scanned the Casey Vehicle, and found Code P1682. HOEHN found that the fuse block ignition bus was loose. The fuse block was reinstalled. Casey was required to pay for the repairs.

26.     On June 20, 2018, at 92,318 miles, Casey brought the Casey Vehicle back to Hoehn, complaining of the engine light coming on and off, of the traction control message and of the reduced power message being displayed. Hoehn diagnosed the fuse block as being defective and replaced the fuse block. Casey was required to pay for the replacement of the fuse block.

27.     All of the fuse block repairs relating to the Casey Vehicle which are referenced herein related to the Engine Bay Fuse Block.

28.     As previously stated, GM has been aware for years, even predating the manufacture and sale of Class Vehicles, that it designs, assembles, and installs defective fuse blocks. Finally, after several years of consumers complaining about defects relating to the Engine Bay Fuse Block's installed in the Class Vehicles, on December 12, 2019, GM published bulletin 19-NA-276, entitled, "Potential Reduced Engine Power Message Displayed and/or Engine Stall With DTCS P1682 and/or P0689 Set." The bulletin references the Class Vehicles. The bulletin describes the condition as, "Some customers may comment that the engine stalled and/or a reduced engine power message was displayed. The technician may find DTCs P1682 and/or P0689 stored." The bulletin describes the cause as being, "The cause of the condition may be poor terminal tension on terminal 51 in X50A fuse block Underhood X3." The correction is described as, "Following the Service Procedure below, dealers are to inspect, and if repair is necessary, replace terminal 51 in X50A fuse block – Underhood X3, with a new terminated lead."

29.     Bulletin 19-NA-276 essentially acknowledges that if a consumer complains of a reduced power message and/or engine stalling, along with fault codes P1682 and/or P0689, the cause may be that terminal 51 has poor tension. Terminal 51 is used as a receptacle on the fuse block for an Engine Relay. The bulletin, by virtue of its very existence, and by virtue of the fact that it applies to all of the Class Vehicles, and no other vehicles, is an acknowledgment of a classwide problem relating to the Engine Bay Fuse Block. GM would say that the bulletin is merely a diagnostic tool. Casey contends that the bulletin was published in order to diagnose and resolve a known defect regarding the Engine Bay Fuse Block. Although the bulletin exists, consumers are expected to pay for the repairs, unless the repair is done during warranty time period.

30.    Casey contends that the condition described in bulletin 19-NA-276 is the same condition that resulted in the repair attempts to the Casey Vehicle at 89,373 miles and 92,318 miles.

31.    GM widely advertises, publishes, publicizes, and disseminates to the public that the Class Vehicles are both safe and of good quality.

32.    GM  has known of the Fuse Block Defect for years, even predating the manufacture and distribution of the Class Vehicles. GM knew or should have known that the Fuse Block Defect resulted in the Class Vehicles being defective and not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, GM actively concealed and failed to disclose this defect to Casey and the Class Members at the time of purchase or lease and thereafter.

33.    GM has failed to notify Class Members of the Fuse Block Defect, placing consumers at risk of suffering injury and financial loss.

34.    It is Casey's information and belief that the Fuse Block Defect is a pervasive defect affecting every single Class Vehicle and posing a serious safety hazard for the general public.

35.    GM has superior and exclusive knowledge of the Fuse Block Defect. GM knew that the defect was not known or reasonably discoverable by Casey and Class Members prior to their purchase or lease of the Class Vehicles.

36.    Only GM had access to information about the significant risks associated with the Fuse Block Defect, through GM's dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other internal sources of aggregate information about the problem.

37.    While GM has been fully aware of the Fuse Block Defect in the Class Vehicles, GM has actively concealed the existence and nature of the Fuse Block

Defect from Casey and Class Members at the time purchase or sale and thereafter. Specifically, GM has:

a.   failed to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformity of the Class Vehicles, including the Fuse Block Defect;

b.   failed to disclose at the time of purchase or lease that the Class Vehicles were not in good in working order, were defective, and were not fit for their intended purposes; and

c.   not properly instructed GM authorized repair facilities regarding the true nature of the Fuse Block Defect, the frequency of the Fuse Block Defect, and how to properly diagnose the Fuse Block Defect. GM has instead made false statements that that there is no defect relating to the Class Vehicles. Consequently, this misinformation provided by GM has resulted in complaining consumers being told that there is nothing wrong with their Class Vehicles.

38.   Casey and Class Members have expended money to make repairs as a result of the Fuse Block Defect, despite GM's knowledge of the defect.

39.   The Members of the Class have not received the value for which they bargained when they purchased or leased the Class Vehicles.

40.   As a result of the defects, the value of the Class Vehicles has diminished, including without limitation re-sale value.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

41.   Since the defects in the design or manufacture of the Class Vehicles cannot be detected until the defect manifests itself, Casey and the Class Members were not reasonably able to discover the problem until after purchasing or leasing

1   the Class Vehicles, despite their exercise of due diligence.

2       42.    Casey and the Class Members had no realistic ability to discern that

3   the Class Vehicles were defective until after Casey and the Class Members

4   experienced the Fuse Block Defect. In addition, despite their due diligence, Casey

5   and the Class Members could not reasonably have been expected to learn or

6   discover that they were deceived and that material information concerning the Class

7   Vehicles had been concealed from them until manifestation of the Fuse Block

8   Defect. Therefore, the discovery rule is applicable to the claims asserted by Casey

9   and the Class Members.

10      43.    GM has known of the defect in the Class Vehicles and have concealed

11   from or failed to alert owners and lessees of the Class Vehicles of the full and

12   complete nature of the Fuse Block Defect.

13      44.    Any applicable statute of limitation was tolled by GM's knowledge,

14   active concealment, and denial of the facts alleged herein.  GM is further estopped

15   from relying on any statute of limitation because of its concealment of the defective

16   nature of the Class Vehicles.

17                          **CLASS ACTION ALLEGATIONS**

18      45.    Casey brings this lawsuit as a class action on behalf of herself and all

19   other Class Members similarly situated pursuant to Federal Rule of Civil Procedure

20   23.  This action satisfies the numerosity, commonality, typicality, adequacy,

21   predominance, and superiority requirements of those provisions.

22      46.    The Class and Sub-Class are defined as:

23           Class: All Persons in the State of California who purchased

24           or leased a Class Vehicle.

25           Sub-Class:   All Class Members who are "consumers" within

26           the meaning of California Civil Code § 1761(d). Excluded

27           from the Class and Sub-Classes are: (1) Defendants, any

28

entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Casey reserves the right to amend the Class and Sub-Classes definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

47.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

48.     Typicality: The claims of the representative Casey are typical of the claims of the Class in that the representative Casey, like all Class Members, purchased and/or leased a Class Vehicle designed, manufactured, and distributed by GM.  The representative Casey, like all Class Members, has been damaged by Defendants' misconduct in that she has incurred or will incur the cost of repairs relating to the Fuse Block Defect.  Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

49.     <u>Commonality</u>: There are numerous questions of law and fact common to Casey and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

       a.       whether the Class Vehicles suffer from the Fuse Block Defect;

       b.       whether the Fuse Block Defect constitutes an unreasonable safety risk;

       c.       whether Defendants know about the Fuse Block Defect and, if so, how long Defendants have known of the defect;

       d.       whether the defective nature of the Class Vehicles constitutes a material fact;

       e.       whether Defendants have a duty to disclose the defective nature of the Class Vehicles to Casey and Class Members;

       f.       whether Casey and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

       g.       Whether Defendants knew or reasonably should have known of the Fuse Block Defect in the Class Vehicles before the Class Vehicles were sold or leased them to Class Members;

       h.       Whether Defendants should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repair and replacement of the Class Vehicles;

       i.       Whether Defendants breached the express terms of the GM warranty by refusing to pay for repairs relating to the Fuse Block Defect during the term of the warranty;

       j.       Whether Defendants concealed and refused to disclose the nature of the Fuse Block Defect from purchasers and lessees of Class Vehicles at the time of sale and otherwise;

k.      Whether Class Members have suffered loss as a result of the Fuse Block Defect, and to what extent GM is obligated to compensate the Class Members for any and all losses.

50.     <u>Adequate Representation</u>:  Casey will fairly and adequately protect the interests of the Class Members. Casey has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Casey intends to prosecute this action vigorously.

51.     <u>Predominance and Superiority</u>: Casey and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

Violation of Business & Professions Code § 17200, et seq.

Against All Defendants

-14-

52.   Casey hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

53.   Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

54.   Casey and the Class Members are reasonable consumers who do not expect their Class Vehicles to experience the Fuse Block Defect and who do not expect their Class Vehicles to stall in traffic or exhibit other serious safety hazards. These are reasonable and objective consumer expectations relating to the Class Vehicles.

55.   GM knows and has known that the Class Vehicles suffer from an inherent defect, were defectively designed or manufactured, would experience the Fuse Block Defect, and were not suitable for their intended use.

56.   In failing to disclose the Fuse Block Defect, GM has knowingly and intentionally concealed material facts and breached their duty not to do so.

57.   GM was under a duty to Casey and the Class Members to disclose the defective nature of the Class Vehicles because:

a.   GM was in a superior position to know the true state of facts about the Fuse Block Defect in the Class Vehicles;

b.   GM made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and,

c.   GM actively concealed the defective nature of the Class Vehicles from Casey and the Class Members.

58.   The facts concealed and not disclosed by GM to Casey and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase the Class Vehicles. Had Casey and other

Class Members known that the Class Vehicles had the Fuse Block Defect, Casey and the Class Members would not have purchased Class Vehicles.

59.    GM continued to conceal the defective nature of the Class Vehicles even after Class Members began to report problems. Indeed, GM continues to cover up and conceal the true nature of the Fuse Block Defect.  GM did not disclose to consumers that the Fuse Block Defect exists and did not reimburse consumers for costs incurred in connection with the Fuse Block Defect.

60.    GM has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

61.    The unfair or deceptive acts or practices occurred repeatedly in GM's trade or business and were capable of deceiving a substantial portion of the purchasing public.

62.    As a direct and proximate result of GM's unfair and deceptive practices, Casey and the Class have suffered and will continue to suffer damages.

63.    GM was unjustly enriched and should be required to make restitution to Casey and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## **SECOND CAUSE OF ACTION**

Fraud by Omission

Against All Defendants

64.    Casey hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

65.    It is Casey's information and belief that GM knew or should have known that the Fuse Block Defect in the Class Vehicles was a condition rendering the Class Vehicles defectively designed or manufactured, causing the Class

Vehicles to be unsafe, and rendering the Class Vehicles not suitable for their intended use.

66.     GM concealed from and failed to disclose to Casey and the Class the defective nature of the Class Vehicles.

67.     GM was under a duty to Casey and the Class to disclose the defective nature of the Fuse Block Defect because:

a.     GM was in a superior position to know the true state of facts about the Fuse Block Defect in the Class Vehicles;

b.     GM made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles;

c.     GM actively concealed the defective nature of the Class Vehicles from Casey and the Class;

d.     The Fuse Block Defect posed a serious safety hazard for Class Members, as well as the general public.

68.     The facts concealed or not disclosed by Defendants to Casey and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase the Class Vehicles.  Had Casey and other Class Members known that the Class Vehicles had the Fuse Block Defect, Casey and the Class Members would not have purchased and leased Class Vehicles or would have paid less for them.

69.     Defendants continued to conceal the defective nature of the Class Vehicles even after Class Members began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem.

70.     Defendants concealed or failed to disclose the true nature of the design or manufacturing defect consisting of the Fuse Block Defect existing in its Class Vehicles, in order to induce Casey and the Class to act thereon. Casey and the Class Members justifiably relied on the omission to their detriment. This detriment is

evident from Casey's and Class Members' purchase or lease of Defendants' Class Vehicles.

71.     Defendants continued to conceal the defective nature of the Class Vehicles even after Members of the Class began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today, including denying reimbursement of repair costs related to repairs that have been necessary due to the Fuse Block Defect.

72.     As a direct and proximate result of Defendants' misconduct, Casey and the Class Members have suffered and will continue to suffer actual damages.

## THIRD CAUSE OF ACTION

Breach of Implied Warranty

Against All Defendants

73.     Casey hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

74.     GM was the manufacturer, distributor, warrantor, and seller of the Class Vehicles. GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

75.     GM provided Casey and the Class Members with an implied warranty that the Class Vehicles and their components and parts were merchantable and fit for the ordinary purposes for which they were sold. However, the Class vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation, because the Fuse Block Defect results in the Class Vehicles being unsafe.

76.     GM impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included a warranty that the Class Vehicles were safe and fit for their intended use. However, the Class vehicles

-18-

were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation, because the Fuse Block Defect results in the Class Vehicles being unsafe.

77.     As a result of GM's breach of the applicable implied warranties, owners and lessees of Class Vehicles have suffered ascertainable loss of money, property and value of the Class Vehicles, as well as suffering other damage.

## **FOURTH CAUSE OF ACTION**

Violation of Consumer Legal Remedies Act

Against All Defendants

78.     Casey incorporates by reference the preceding paragraphs of this Complaint.

79.     Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a Consumer Legal Remedies Act violation may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000, 2) an order enjoining the methods, acts, or practices, 3) restitution of property, 4) punitive damages, and 5) any other relief that the court deems proper.

80.     GM has violation the Consumer Legal Remedies Act by representing that the Class Vehicles had characteristics or benefits which they did not have, in violation of Civil Code Section 1770(a)(5), falsely representing that the Class Vehicles were of a particular standard, quality or grade when they were of another, in violation of Civil Code Section 1770(a)(7), and advertising Class Vehicles with an intent not to sell them as advertised, in violation of Civil Code Section 1770(a)(9).

81.     Casey gave GM notice of Casey's claims pursuant to the Consumer Legal Remedies Act and requested that GM provide a corrective remedy within the

time period allowed by law. GM failed to provide a corrective remedy within the time period allowed by law.

82.   Civil Code section 1781 provides that Casey may pursue this case as a class action.

83.   Casey requests compensatory, actual, incidental and consequential damages.

84.   Casey requests injunctive relief pursuant to Civil Code 1782(d).

85.   Casey is entitled to attorney fees pursuant to Civil Code section 1780(e).

## RELIEF REQUESTED

86.   Casey, on behalf of herself, and all others similarly situated, requests the Court to enter judgment against Defendants, as follows:

a.   An order certifying the proposed Class and Sub-Classes, designating Casey as named representatives of the Class, and designating the Casey's Counsel as Class Counsel;

b.   A declaration that Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

c.   An order enjoining Defendants from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and to repair the Class Vehicles so that they will no longer possess the Fuse Block Defect;

d.   An award to Casey and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

e.   An award to Casey and the Class of any repair costs they are owed;

f.      A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, or make full restitution to Casey and Class Members;

g.      An award of attorneys' fees and costs, as allowed by law;

h.      An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

i.      An award of pre-judgment and post-judgment interest;

j.      Leave to amend the Complaint to conform to the evidence produced at trial; and

k.      Other relief as may be appropriate under the circumstances.

Date:  February 18, 2020                    The Law Office of Robert L. Starr


                                            By: /s/ Adam Rose
                                            Attorney for Plaintiff
                                            Rebecca Casey, individually, and on
                                            behalf of a class of similarly situated
                                            individuals

JURY TRIAL DEMAND

Plaintiff demands a jury trial.

Date: February 18, 2020                    _____/s/ Adam Rose_____