UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

REBECCA CASEY, individually,
and on behalf of a class of
similarly situated individuals,

Plaintiff,

v.

GENERAL MOTORS, LLC; and
DOES 1-10, inclusive,

Defendants.

Case No.:  20-cv-299-WQH-MSB

**ORDER**

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiff's First Amended Class Action Complaint filed by Defendant General Motors LLC. (ECF No. 16).

I.   **PROCEDURAL BACKGROUND**

On February 18, 2020, Plaintiff Rebecca Casey filed a Class Action Complaint against Defendant General Motors LLC ("GM"). (ECF No. 1). On September 15, 2020, Casey filed an Amended Class Action Complaint ("Amended Complaint") against Defendants GM and Does 1 through 10, alleging that Defendants concealed and failed to disclose a design defect in the engine bay fuse block of vehicles manufactured by GM between 2013 to 2017. (ECF No. 14).

On September 29, 2020, GM filed a Motion to Dismiss the Amended Complaint. (ECF No. 16). GM moves to dismiss the Amended Complaint under Rule 12(b)(6) of the

Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. On October 30, 2020, Casey filed an Opposition to the Motion to Dismiss. (ECF No. 19). On November 13, 2020, GM filed a Reply. (ECF No. 20).

## II.   ALLEGATIONS IN THE AMENDED COMPLAINT

On December 9, 2016, Casey purchased a used 2014 Buick Enclave ("Vehicle") from GM franchise dealership Hoehn Buick, GMC, Cadillac ("Hoehn") in Carlsbad, California. The Vehicle had been sold new on October 13, 2013. When Casey purchased the Vehicle, it had been driven 70,657 miles. Before deciding to purchase the Vehicle, "Casey reviewed the window sticker and relied on its advertisements, including details of the existence and length" of the Vehicle's factory warranty. (ECF No. 14 ¶ 3).

> At the time the [ ] Vehicle was sold new, the [ ] Vehicle came with a 4-year 50,000-mile basic warranty, a 6-year 70,000-mile powertrain warranty, a 7-year 70,000-mile California emissions warranty, an 8-year 80,000-mile federal emissions warranty for certain emissions related components, and a 6-year unlimited mileage warranty for certain types of rust. Thus, at the time that Casey purchased the [ ] Vehicle, the [ ] Vehicle was still covered by portions of the original factory warranty.

(*Id.* ¶ 2).

On April 30, 2018, at 89,373 miles, Casey brought the Vehicle to Hoehn for repair. On approximately five occasions, the Vehicle lost power while in motion, and the "stability and traction warning illuminated," requiring Casey to pull over and restart the Vehicle. (*Id.* ¶ 52). Hoehn "identified Fault Code P1682, and found that the fuse block ignition bus, also known as both Terminal 51 and the Engine Relay, was loose." (*Id.* ¶ 54). Hoehn attempted to fix the problem by reinstalling and resecuring the engine bay fuse block. "The repair did not work, and the [ ] Vehicle was brought back by Casey on June 20, 2018 with the same symptoms." (*Id.*). Hoehn diagnosed the engine bay fuse block as "defective" and replaced it. (*Id.* ¶ 55). Casey was required to pay for the repairs.

In certain GM vehicles, including Casey's Vehicle, there is an engine bay fuse block located on the passenger side under the hood. The function of a fuse block is to control and

2

distribute electrical energy from a vehicle's battery or generator throughout the vehicle. "The functionality of a fuse block is critical" to vehicle safety because the fuse block distributes energy "to a variety of safety related components, such as air bags, different engine components, the brakes, brake lights, headlights, etc." (*Id.* ¶ 23).

The engine bay fuse block provides electrical energy to different engine components using a relay. The relay plugs into the engine bay fuse block "like a power cord plugs into a power outlet in the wall of a home." (*Id.* ¶ 17). To function properly, there must be adequate tension so that the relay's metal prongs fit tightly into the engine bay fuse block. If the relay is loose, the vehicle can fail to start or can stall, which can cause "the loss of acceleration, the loss of power steering, the loss of power brakes, and several other very unsafe conditions." (*Id.* ¶ 21). "A properly designed and constructed fuse block should last the life of a vehicle." (*Id.* ¶ 15).

GM's fuse blocks are "mass produced." (*Id.* ¶ 22). The engine bay fuse blocks for the following GM products have "virtually the identical layout and design:" 1) the 2007-2010 Saturn Outlook; 2) the 2008-2017 Buick Enclave—including Casey's Vehicle; 3) the 2009-2017 Chevrolet Traverse; 4) the 2007-2016 Chevrolet Acadia; and 5) the 2017 Chevrolet Acadia Limited. (*Id.* ¶ 27). There is a "Fuse Block Defect" in the design, materials, and assembly of these engine bay fuse blocks "wherein the fuse block terminals fail to maintain sufficient tension, resulting in relays which are mounted on fuse blocks being loose." (*Id.* ¶ 28). "The Fuse Block Defect is the fact that there is poor connection/terminal retention." (*Id.* ¶ 49). The Fuse Block Defect causes vehicles to stall, lose acceleration, lose power steering, and/or lose power brakes.

GM has been aware of the Fuse Block Defect since 2010. "GM's own documents confirm that consumers have complained for years, predating the sale and lease of the [vehicles with the Fuse Block Defect], that the [ ] [v]ehicles have experienced problems which are and were symptomatic of the Fuse Block Defect." (*Id.* ¶ 29). GM has published several service bulletins describing the symptoms of the Fuse Block Defect in vehicles with

the common fuse block design, explaining how to diagnose the problem and "purport[ing] to offer [ ] repair[s]." (*Id.*).

The December 8, 2010, service bulletin applies to "2011 and prior GM Passenger Cars and Trucks." (*Id.* ¶ 30). The bulletin reports customer complaints of "[a]n intermittent no crank/no start, intermittent malfunction indicator lamp (MIL) illumination, intermittent service lamp illumination, and intermittent service message(s) being displayed," which can be caused by various conditions including "poor connection/terminal retention." (*Id.* ¶ 30). The bulletin recommends resolving the conditions by "apply[ing] a dielectric lubricant, and only replac[ing] parts if applying the dielectric lubricant does not resolve the problem." (*Id.* ¶ 31).

The February 2013 service bulletin applies to "2014 and prior GM cars and light duty trucks." (*Id.* ¶ 34). The bulletin identifies diagnostic Fault Codes P1682 and P0689, which "relate to the ignition circuit and engine stalling" and can, "among other things, [ ] indicate poor connection/terminal retention relating to the . . . Engine Relay, [ ] which is located in the Engine Bay Fuse Block." (*Id.* ¶ 35). The bulletin "advis[es] technicians that if they identify certain fault codes, including P1682 and P0689, the technician should test the terminal pin fit and tension" for problems. (*Id.*).

The February 12, 2014, service bulletin applies to the 2008-2014 Buick Enclave, 2009-2014 Chevrolet Traverse, the 2007-2014 GMC Acadia, and the 2010 Saturn Outlook, all of which share the common fuse block design. The bulletin "purports to identify the root cause of Fault Code P1682" as the use of improperly wired after-market equipment. (*Id.* ¶ 38).

The November 16, 2018, service bulletin applies to the 2013-2014 Buick Enclave, 2013-2014 Chevrolet Traverse, and 2013-2014 GMC Acadia, which share the common fuse block design. The bulletin "identifies an ongoing problem with poor connection/terminal retention, causing terminal corrosion." (*Id.* ¶ 40). The bulletin reports customer complaints of an "intermittent Service Engine Soon light on with Reduced Engine Power and/or engine stall with P0689 and/or P1682 stored in history." (*Id.* ¶ 39).

The bulletin identifies the cause of this problem as "Terminal #51 at X3 Connector of Under Hood Fuse Block loose terminal tension with arcing corrosion on terminal #51 of the fuse block." (*Id.*). "Terminal 51 is used as a receptacle on the fuse block for an Engine Relay." (*Id.* ¶ 44).

The November 5, 2019, "Preliminary Information" applies to all GM models 2005-2020. (*Id.* ¶ 42). The Preliminary Information states that "terminal tension is one of the main culprits" in diagnosing an "intermittent electrical concern." (*Id.*).

The December 12, 2019, service bulletin applies to the 2013-2017 Buick Enclave, 2013-2017 Chevrolet Traverse, 2013-2016 Chevrolet Acadia, and 2017 Chevrolet Acadia Limited, which share the common fuse block design. The bulletin describes an ongoing problem with "engine stall[ing] and/or a reduced engine power message" with stored Fault Codes P1682 or P0689. (*Id.* ¶ 43). The bulletin states that the cause of this condition "may be poor terminal tension on terminal 51 in X50A fuse block Underhood X3" and directs technicians to "inspect, and if repair is necessary, replace terminal 51 in X50A fuse block – Underhood X3, with a new terminated lead." (*Id.*). This condition "is the same condition that resulted in the repair attempts to [ ] Casey['s] Vehicle . . . ." (*Id.* ¶ 59).

These service bulletins dating back to 2010 "confirm customer complaints which GM attributed to a lack of terminal tension." (*Id.* ¶ 47). The service bulletins are "interrelate[d]" because they

> relate to a common defect which relates to all of the GM vehicles which share the Common Fuse Block Design. The common defect is the Fuse Block Defect. The Fuse Block Defect is the fact that there is poor connection/terminal retention. The poor connection/terminal retention causes the Engine Relay, which is mounted in terminal 51 to be loose, causing intermittent lack of connectivity.

> As a result, the [ ] Vehicles produce Fault Code P689 and Fault Code P1682. Furthermore, the [ ] Vehicles experience engine stalling, as well intermittent no crank/no start, intermittent malfunction indicator lamp (MIL) illumination, intermittent service lamp illumination, and intermittent service message(s) being displayed, [as first identified in the 2010 service bulletin].

(*Id.* ¶¶ 49-50).

Before 2019, GM offered "band-aid solutions" to the Fuse Block Defect, including "to pack the area with dielectric lubricant, or blame the problem on after market equipment, to attempt to remedy or at least explain away the poor terminal connection." (*Id.* ¶ 31, 47). If the vehicle is no longer under warranty, customers are required to pay for the repairs. GM "failed to take any action to resolve the problem because, based upon a cost benefit analysis, GM has not been financially motivated to resolve the problem." (*Id.* ¶ 48).

GM has actively concealed the Fuse Block Defect since it became aware of the defect. GM "widely advertises, publishes, publicizes, and disseminates to the public that [its vehicles] are both safe and of good quality." (*Id.* ¶ 60). However, the vehicles with the Fuse Block Defect are "not fit for their intended purpose of providing consumers with safe and reliable transportation." (*Id.* ¶ 61). GM has failed to disclose the existence of the Fuse Block Defect at the time of purchase or thereafter and has "instead made false statements that [ ] there is no defect relating to" vehicles with the common fuse block design. (*Id.* ¶ 66). As a result, Casey and other consumers have expended money for repairs, have not received the value for which they bargained when they purchased their vehicles, and have experienced a diminished resale value of their vehicles.

Casey seeks to represent the following class:

All Persons in the State of California who purchased or leased model year 2013 through 2017 Buick Enclave, model year 2013 through 2017 Chevrolet Traverse, model year 2013 through 2016 Chevrolet Acadia, and model year 2017 Chevrolet Acadia Limited vehicles ("Class Vehicles").

(*Id.* ¶ 77). Casey further seeks to represent the following subclass:

All Class Members who are "consumers" within the meaning of California Civil Code § 1761(d). Excluded from the Class and Sub-Classes are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) persons who have suffered personal injuries as the result of the facts alleged herein.

(*Id.*).

Casey and the class bring the following claims against Defendants: 1) fraud by omission; and 2) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* Casey and class seek injunctive relief, declaratory relief, damages, and attorneys' fees and costs.

## III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The pleader must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1110 (9th Cir. 2017) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)), *as corrected* (Mar. 12, 2018). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted).

## IV. DISCUSSION

GM contends that the Court should dismiss the Amended Complaint because Casey fails to allege a causal connection between the issues her vehicle experienced and the "specific alleged defect identified in the Amended Complaint" of "poor terminal tension in terminal 51 as described in [the February 2019 service] bulletin." (ECF No. 16-1 at 14-15). GM contends that Casey alleges that the first repair to her Vehicle "involved reconnecting the loose 'ignition bus,' not terminal 51," and Casey "alleges no facts to show that terminal 51 was the reason [the fuse block was replaced in the second repair], as opposed to some other reason." (*Id.* at 15-16). GM contends that Casey fails to plausibly allege that GM had knowledge of the alleged defect in terminal 51 prior to the sale of the Vehicle. GM contends that the only service bulletins identifying issues with terminal 51 were published in 2018 and 2019, years after Casey purchased the Vehicle and years after the Vehicle was sold new. GM contends that the service bulletins published before the sale of the Vehicle apply to vehicles including those that do not share the common fuse block

design and fail to demonstrate GM's knowledge of any defect with terminal 51.[1] GM further contends that Casey fails to plead the essential elements of the claims with particularity under Rule 9(b). GM contends that Casey fails to describe the content of any alleged omission or where the information should have been disclosed. GM contends that Casey fails to identify any advertisements or representations that she relied on prior to purchasing the Vehicle that failed to contain any required information.

Casey contends that "GM has sought to redefine the alleged defect so that it focuses specifically on 'terminal 51' in the Fuse Block;" however, "the alleged defect as defined in the [Amended Complaint] . . . is the lack of sufficient tension at the engine fuse block terminal." (ECF No. 19 at 7). Casey contends that that the problems she experienced with her Vehicle were manifested in Fault Codes P1682 and P0689, which were "identified by GM as rooted specifically in terminal 51." (*Id.*). Casey contends that she sufficiently alleges that GM has known about the Fuse Block Defect since 2010, predating the sale of any of the Class Vehicles. Casey contends that the service bulletins demonstrate that "GM knew as early as 2010 that there was a terminal tension problem with all of the relays, which includes terminal 51, and that a problem with terminal tension with terminal 51 would cause stalling and other safety hazards." (*Id.* at 7-8). Casey contends that Rule 9(b)'s heightened pleading standard does not apply because "fraud is not a required element of Plaintiff's claims." (*Id.* at 17). Casey contends that even if Rule 9(b) applies, she "pleads with particularity that, at the time of purchase, she reviewed the window sticker and relied on its advertisements, including details of the existence and length of the express warranties, when deciding whether to purchase or lease" the Vehicle. (*Id.* at 18). Casey contends that GM "omitted the existence and nature of the defect from those sources at the point of sale and thereafter." (*Id.*).

---

[1] GM requests that the Court take judicial notice of eight GM service bulletins. (ECF No. 16-2 at 2). Judicial notice of the requested documents is unnecessary for this Order. The request for judicial notice is denied. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

1    Casey brings individual and class claims against Defendants for fraud by omission
2    and violation of the CLRA. "[N]ondisclosure is a claim for misrepresentation in a cause of
3    action for fraud, [and] it (as any other fraud claim) must be pleaded with particularity under
4    Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). The plaintiff
5    must provide "an account of the time, place, and specific content of the false
6    representations as well as the identities of the parties to the misrepresentations." *Swartz v.
7    KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

8    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or
9    practices undertaken by any person in a transaction intended to result or which results in
10   the sale . . . of goods or services to any consumer." Cal. Civ. Code § 1770(a). Conduct
11   prohibited by the CLRA includes "[r]epresenting that goods or services have . . .
12   characteristics . . . that they do not," "[r]epresenting that goods or services are of a particular
13   standard, quality, or grade . . . if they are of another," and "[a]dvertising goods or services
14   with intent not to sell them as advertised." *Id.* § 1770(a)(5), (7), (9). "[F]raud is not a
15   necessary element of a claim under the CLRA . . . ." *Kearns*, 567 F.3d at 1125 (citing *Vess
16   v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). Because "a defendant can
17   violate the . . . CLRA by acting with mere negligence," Rule 9(b)'s heightened pleading
18   standard may not apply. *Moore v. Mars Petcare U.S., Inc.*, 966 F.3d 1007, 1020 n.11 (9th
19   Cir. 2020). However,

20       [a] plaintiff may allege a unified course of fraudulent conduct and rely entirely
21       on the course of conduct as the basis of [the CLRA] claim. In that event, the
         claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading
22       . . . as a whole must satisfy the particularity requirement of Rule 9(b).

23   *Kearns*, 567 F.3d at 1125 (second and third alterations in original) (quoting *Vess*, 317 F.3d
24   at 1103-04).

25   In this case, Casey's first claim for fraud by omission is a cause of action for fraud
26   and must be pleaded with particularity. *See id.* at 1127. The second claim for violation of
27   the CLRA is based on the same facts as the fraud claim. The second claims relies on the
28

10

alleged fraudulent course of conduct that GM intentionally concealed and failed to disclose the Fuse Block Defect. Both of Casey's claims are "'grounded in fraud' or [ ] 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)."[2] *Id.* at 1125 (second alteration in original) (quoting *Vess*, 317 F.3d at 1103-04).

Under California law, a fraud or CLRA claim may be based on an omission where the "omission [is] contrary to a representation actually made by the defendant, or [is] an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006), *as modified* (Oct. 31, 2006). A manufacturer's duty to disclose "is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue" and requires that the defendant was aware of the defect at the time of sale. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (citations omitted)). "To state a [CLRA or fraud] claim for failing to disclose a defect, a party must allege (1) the existence of a design defect; (2) the existence of an unreasonable safety hazard; (3) a causal connection between the alleges defect and the alleged safety hazard; and [(4)] that the manufacturer knew of the defect at the time the sale was made." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (citation omitted). "[T]o plead the circumstances of omission with specificity [under Rule 9(b)], plaintiff must describe the content of the omission and where the omitted information should or could have been revealed as well as . . . [the content of] advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the

---

[2] Where a plaintiff alleges some fraudulent and some non-fraudulent conduct, "Rule 9(b)'s heightened pleading requirements [apply] only to 'averments' of fraud supporting a claim rather than to the claim as a whole." *Vess*, 317 F.3d at 1104. The court should disregard or strip from the complaint averments of fraud that are insufficiently pled and then examine the allegations that remain to determine whether they state a claim. *See id*. In this case, Casey incorporates by reference all of the fraud allegations into the CLRA claim and alleges a unified course of fraudulent conduct, requiring the pleading as a whole to satisfy Rule 9(b). *See* ECF No. 14 ¶ 93; *Vess*, 317 F.3d at 1104 (citing *Melder v. Morris*, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994) ("Appellants maintain that their 1933 Securities Act claims were inappropriately subjected to the Rule 9(b) heightened pleading standard. This argument is untenable in light of the complaint's wholesale adoption of the allegations under the securities fraud claims for purposes of the Securities Act claims.")).

allegedly omitted information." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009).

In addition, Article III standing requires that that the plaintiff suffered an injury that is "fairly traceable to the challenged conduct." *Levine v. Vilsack*, 587 F.3d 986, 991-92 (9th Cir. 2009), *as amended* (Nov. 20, 2009). Casey must allege facts that support an inference that her Vehicle experienced the Fuse Block Defect described in the Amended Complaint.

In the Amended Complaint, Casey alleges that the 2013-2017 Buick Enclave, 2013-2017 Chevrolet Traverse, 2013-2016 Chevrolet Acadia, and 2017 Chevrolet Acadia Limited share a common fuse block design and contain a "Fuse Block Defect" "wherein the fuse block terminals fail to maintain sufficient tension, resulting in relays which are mounted on fuse blocks being loose." (ECF No. 14 ¶ 28). Casey alleges that "[t]he Fuse Block Defect is the fact that there is poor connection/terminal retention." (*Id.* ¶ 49). Casey alleges that Fuse Block Defect affects the engine bay fuse block located on the passenger side under the hood in Class Vehicles, causing safety issues including stalling, loss of acceleration, loss of power steering, and/or loss of power breaking.

Casey alleges that GM has had knowledge of the Fuse Block Defect since 2010. Casey alleges that the 2010 through 2019 service bulletins are "interrelat[ed]" and "point back to the December 8, 2010 Service Bulletin," in which GM first described the customer complaints that are symptomatic of poor terminal tension. (*Id.* ¶ 47). Casey alleges that in the service bulletins predating the sale of the Class Vehicles, GM "sought to attribute the problem to various causes, such as after-market accessories[.]" (*Id.*). Casey alleges the 2019 service bulletin finally acknowledged the "underlying issue" of "poor terminal tension in terminal 51 in X50A fuse block Underhood X3." (*Id.* ¶¶ 43, 47). Casey alleges that the fact that the 2019 service bulletin identifies the cause of symptoms dating back to 2010 as poor terminal tension in the engine bay fuse block demonstrates that "GM has known about the Fuse [B]lock Defect for years, predating GM's sale and distribution of the Class Vehicles[.]" (*Id.* ¶ 48).

Casey alleges that on December 9, 2016, she purchased a used Class Vehicle—a 2014 Buick Enclave, which was sold new on October 13, 2013. Casey alleges that before deciding to purchase the Vehicle, she "reviewed the window sticker and relied on its advertisements, including details of the existence and length" of the vehicle's factory warranty. (*Id.* ¶ 3). Casey alleges that on approximately five occasions, the Vehicle lost power while in motion, and the "stability and traction warning illuminated," requiring Casey to pull over and restart the Vehicle. (*Id.* ¶ 52). Casey alleges that she took the Vehicle to Hoehn for repair twice, and Hoehn "identified Fault Code P1682, and found that the fuse block ignition bus, also known as both Terminal 51 and the Engine Relay, was loose." (*Id.* ¶ 54). Casey alleges that Hoehn diagnosed the engine bay fuse block as "defective" and replaced it. (*Id.* ¶ 55).

Casey alleges that GM has "failed to disclose at any time . . . that the Class vehicles have the Fuse Block Defect," has "failed to disclose at the time of purchase or lease that the Class Vehicles were not in good working order, were defective, and were not safe," and has "made false statements that there is no defect relating to the Class Vehicles." (*Id.* ¶ 66). Casey alleges that as a result of "this misinformation," Casey and the class members have had to pay for repairs resulting from the Fuse Block Defect, have "not received the value for which they bargained when they purchased or leased the Class Vehicles," and have experienced diminished value of the Class Vehicles. (*Id.* ¶ 68).

Casey's allegations that Hoehn determined that her Vehicle's loss of power while in motion and illumination of the stability and traction warning light were caused by terminal 51 or the engine relay being loose are sufficient to support an inference that her Vehicle experienced the Fuse Block Defect described in the Amended Complaint. The Court concludes that facts as alleged by Casey support an inference that the alleged injury is "fairly traceable to the challenged conduct" sufficient to confer Article III standing. *Levine*, 587 F.3d at 991-92.

Two of the GM service bulletins as alleged by Casey predate the original sale of the Vehicle in 2013, and three of the service bulletins predate the sale of the Vehicle to Casey

in 2016. Casey alleges that the 2010 service bulletin applies to "2011 and prior GM Passenger Cars and Trucks," which includes vehicles that share the common fuse block design and vehicles that do not. (ECF No. 14 ¶ 30). Casey alleges that the bulletin reports customer complaints of symptoms that "*may be caused*" by various conditions including "poor connection/terminal retention." (*Id.* (emphasis added)). Casey alleges that the February 2013 service bulletin applies to "2014 and prior GM cars and light duty trucks," which includes vehicles that share the common fuse block design and vehicles that do not. (*Id.* ¶ 34). Casey alleges that the bulletin identifies diagnostic Fault Codes P1682 and P0689, "which, *among other things*, can indicate poor connection/terminal retention relating to the . . . Engine Relay, [ ] which is located in the Engine Bay Fuse Block." (*Id.* ¶ 35 (emphasis added)). Casey alleges that the February 12, 2014, service bulletin applies only to vehicles that share the common fuse block design, but "purports to identify the root cause of Fault Code P1682" as the use of improperly wired after-market equipment, not poor terminal tension. (*Id.* ¶ 38).

The contents of the service bulletins that predate the sale of Casey's Vehicle show that GM was aware that there were customer complaints of certain conditions in some GM vehicles, of which one possible cause includes poor terminal tension. Casey alleges that GM identified the "underlying issue" of "poor terminal tension in terminal 51 in X50A fuse block Underhood X3" in the 2019 service bulletin, years after the sale of the Vehicle. *Id.* ¶¶ 43, 47; *see Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) ("[T]he later evidence tendered to show that Apple released a patch solving the issue does not show knowledge of the defect at the time of sale."). Casey fails to allege facts that support an inference that GM was aware that there was a Fuse Block Defect affecting the Class Vehicles predating the sale of the Class Vehicles. The Court concludes that Casey fails to allege with particularity facts sufficient to infer that "the manufacturer knew of the defect at the time the sale was made." *Williams*, 851 F.3d at 1025 (citation omitted).

Further, the offer, representation, or advertisement that Casey alleges she relied upon before deciding to purchase the Vehicle is the window sticker's "advertisements, including

details of the existence and length" of the Vehicle's factory warranty. (ECF No. 14 ¶ 3). Casey fails to allege that the window sticker did not include any required disclosure. Casey does not allege that she relied on any other advertisement, representation, or other offer from GM that failed to include any required disclosure. Casey fails to "describe [with specificity] the content of the omission and where the omitted information should or could have been revealed as well as . . . [the content of] advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Marolda*, 672 F. Supp. 2d at 1002. The Court concludes that the Amended Complaint fails to meet the pleading requirements of Rule 9(b). GM's Motion to Dismiss is granted.

## V.   SUBJECT MATTER JURISDICTION

The Court is obligated to *sua sponte* inquire into its subject matter jurisdiction whenever its jurisdiction is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977), *superseded by statute on other grounds as stated in Rivera v. United States*, 924 F.2d 948, 954 n.7 (9th Cir. 1991). "[I]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Federal courts have limited jurisdiction and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction[.]" Fed. R. Civ. P. 8(a)(1).

"[D]istrict courts [ ] have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Class Action Fairness Act of 2005 ("CAFA") "gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin*

*Operating Co. v. Owens*, 574 U.S. 81, 84-85 (2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B)). For the purposes of determining diversity of citizenship, "an LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

In this case, Casey alleges that the basis for the Court's jurisdiction is diversity jurisdiction under CAFA. Casey alleges that GM "is a limited liability company." (ECF No. 14 ¶ 4). Casey alleges that she "is a citizen of the State of California, and GM is incorporated in the State of Delaware, and the amount in controversy exceeds $5,000,000." (*Id.* ¶ 9). Casey alleges that "[a]lthough the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough that joinder is impracticable." (*Id.* ¶ 78). Casey fails to allege facts sufficient to support an inference that "the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee*, 574 U.S. at 84-85 (quoting 28 U.S.C. § 1332(d)(2), 5(B)). The Court concludes that Casey has not met her burden to demonstrate that the Court has subject matter jurisdiction.

## VI.   CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiff's First Amended Class Action Complaint (ECF No. 16) is granted. The First Amended Class Action Complaint is dismissed without prejudice. No later than thirty (30) days from the date of this Order, Plaintiff may file any motion for leave to amend pursuant to Civil Local Rules 7.1 and 15.1(c). Any proposed amended complaint shall include a statement of the grounds for the Court's jurisdiction with facts sufficient to demonstrate that the Court has subject matter jurisdiction.

Dated:  March 18, 2021

Hon. William Q. Hayes
United States District Court

16