**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302
Telephone: (818) 225-9040

Attorney for Plaintiff Rebecca Casey,
individually and all others similarly situated

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rebecca Casey, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>General Motors, LLC, and DOES 1-10, inclusive.<br><br>Defendant. | NO. 3:20-cv-00299-WQH-MSB<br><br>Hon. William Q. Hayes<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. Violation of the Song-Beverly Consumer Warranty Act; and,<br><br>2. Violation of California Business and Professions Code, section 17200, *et seq.* |

**INTRODUCTION**

Rebecca Casey ("Casey") brings this action for herself and on behalf all persons in the State of California ("Class Members") who purchased or leased model year 2013 through 2017 Buick Enclave, model year 2013 through 2017 Chevrolet Traverse, model year 2013 through 2016 Chevrolet Acadia, and model year 2017 Chevrolet Acadia Limited vehicles ("Class Vehicles") in the State of California which were manufactured, distributed, and sold by General Motors, LLC, a Delaware Limited Liability Company ("GM"). GM is sometimes referred to as Defendant.

**PARTIES**

**PLAINTIFF REBECCA CASEY**

1.      Casey resides in the State of California. On December 9, 2016, Casey purchased a used 2014 Buick Enclave, VIN 5GAKRBKDXEJ174753 (the "Casey Vehicle") from Hoehn Buick, GMC, Cadillac ("Hoehn"), located at 5334 Paseo Del Norte, Carlsbad, California 92018. Hoehn is a GM franchise dealership, authorized by GM to perform warranty repairs and sell GM vehicles. Casey purchased the Casey Vehicle for personal, family, and household use. At the time of purchase, the Casey Vehicle had already been driven 70,657 miles.

2.      Prior to Casey purchasing the Casey Vehicle, the Casey Vehicle was sold new on or about October 13, 2013. At the time that the Casey Vehicle was sold new, the Casey Vehicle came with a 4-year 50,000-mile basic warranty, a 6-year 70,000-mile powertrain warranty, a 7-year 70,000-mile California emissions warranty, an 8-year 80,000-mile federal emissions warranty for certain emissions related components, and a 6-year unlimited mileage warranty for certain types of rust. Thus, at the time that Casey purchased the Casey Vehicle, the Casey Vehicle was still covered by portions of the original factory warranty.

3.      At the time of purchase, Casey reviewed the window sticker and relied on its advertisements, including details of the existence and length of the express

warranties, when deciding whether to purchase or lease the Casey Vehicle. Casey was an intended third-party beneficiary of GM's express and implied warranties.

**DEFENDANT GENERAL MOTORS, LLC**

4.     GM is a limited liability company, organized and in existence under the laws of the State of Delaware and registered with the Secretary of State to conduct business in the State of California. GM is and was at all relevant times herein engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components throughout the United States of America.

5.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

6.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of GM at all relevant times.

7.     Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary.  Each reference in this Complaint to "GM" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

8.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

///

///

**JURISDICTION**

9.      This is a class action that is subject to the Class Action Fairness Act of 2005 ("CAFA"), and diversity jurisdiction under 28 USC § 1332 since Plaintiff is a citizen of the State of California, and GM is incorporated in the State of Delaware, and the amount in controversy exceeds $5,000,000. CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million.  Those prerequisites are satisfied.

**A.      There is Minimal Diversity**

10.      The foregoing allegations regarding GM's citizenship are confirmed by the California Secretary of State, Statement of Information, LLC-12, filed by General Motors LLC on September 10, 2019, which is the most recent Statement of Information on file.  The Statement of Information states that General Motors LLC is organized under the State of Delaware with its business address at 300 Renaissance Center, Detroit, Michigan 48265.  Further, in a Notice of Removal filed by GM in another unrelated case (*Reno Dealership Group, LLC v. GM LLC*, Case 2:21-cv-00696-MCS-PD (C.D. Cal. 2021), on January 26, 2021, GM states, in relevant part, at paragraph 6, that:

> GM LLC is a citizen of Delaware and Michigan. A limited liability company is deemed a citizen of every state of which its members are citizens. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). GM LLC is a Delaware limited liability company with its principal place of business in Michigan. The sole member of GM LLC is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. The sole member of General Motors Holdings LLC is General Motors Company, which is a Delaware corporation with its principal place of business in Michigan. GM LLC, therefore, is a citizen of Delaware and Michigan for purposes of diversity jurisdiction.

**B.    The Class Has More than 100 Members**

11.    According to information provided by counsel for GM to Plaintiff's counsel, GM sold the following Class Vehicles in California:

For model years 2013-2016, GM sold 15,479 Acadia vehicles in California;

For model year 2017, GM sold 6,091 Acadia LTD vehicles in California;

For model years 2013-2017, GM sold 28,696 Enclave and Traverse vehicles in California.

Based on the foregoing, GM sold over 50,000 Class Vehicles in California.

12.    Further, a recall document issued by GM (pertaining to an unrelated defect), identifies that for model year 2013 alone, GM distributed no less than 155,020 model year 2013 Chevrolet Traverse, Buick Enclave and GMC Acadia vehicles.  On information and belief, California accounts for approximately 11.2% of all new vehicle registrations in the United States.  Using 11.2% as California's percentage of the United States market share, for model year 2013 alone, GM sold over 17,000 Class Vehicles in California.

**C.    The Amount in Controversy Exceeds $5 Million**

13.    As alleged below, Plaintiff paid to repair the defect. Plaintiff's repair record confirms that the cost to repair the defect is no less than $400.00 per vehicle. All of the Class Vehicles are defective and in need of repair. If you multiply $400.00 by 50,000, the amount in controversy well exceeds $5 million.

14.    At all times relevant, Casey resided in the County of San Diego, in the State of California.

15.    Casey purchased the Casey Vehicle in the County of San Diego, in the State of California.

16.    Due to the Casey Vehicle being purchased in San Diego, California, and due to Casey residing in San Diego, California, jurisdiction is proper in the Southern District.

## INTRADISTRICT ASSIGNMENT

17.    A substantial part of the events or omissions giving rise to these claims and a substantial part of the property that is the subject of this action occurred in San Diego County pursuant to Local Rule 3-5(b).

## FACTUAL ALLEGATIONS

18.    The function of a fuse block in a vehicle is to distribute electrical energy from a source of the electrical energy, such as a vehicle's battery or power generator (also referred to as an alternator) throughout the vehicle. The fuse block not only distributes electrical energy, but it acts as a gateway to the distribution of electrical energy, with fuses and relays controlling the flow of electrical energy throughout the vehicle. If there is a defect in the fuse block of a vehicle, the vehicle can experience either intermittent or total disruption of energy distribution. Such a defect could result in conditions including, but not limited to, the vehicle not starting, intermittently stalling, and exhibiting other malfunctions. Many of the conditions which result from a defect in the fuse block render the effected vehicle unsafe, and if unrepaired can result in death or serious bodily injury.

19.    A fuse block is not a consumable wear item, such as a brake, a tire, or a drive belt. A properly designed and constructed fuse block should last the life of a vehicle. There is no replacement interval for the fuse block relating to the vehicles which are the subject of this lawsuit.

20.    The Class Vehicles are equipped with a fuse block located on the passenger side of the Class Vehicles, under the hood (Engine Bay Fuse Block). One of the functions of the Engine Bay Fuse Block is to provide electrical energy to different engine components using a relay (Engine Relay). The Engine Relay located in the Class Vehicles is mounted to the Engine Bay Fuse Block, and acts as a gateway for the flow of energy from the energy source, through the Engine Bay Fuse Block, to different engine components.

21.     The Engine Relay plugs into the Engine Bay Fuse Block like a power cord plugs into a power outlet in the wall of a home. The Engine Relay has metal prongs that stick out, which are plugged into a designated spot on the Engine Bay Fuse Block which is designed to accept the Engine Relay (Engine Relay terminal). When the Class Vehicles are assembled, and if the Engine Bay Fuse Block later undergoes repair, in order to install the Engine Relay, a technician merely takes the Engine Relay, with the metal prongs pointing at the top of the Engine Bay Fuse Block, and pushes the Engine Relay into the Engine Relay Terminal portion of the Engine Bay Fuse Block. If a technician wishes to remove the Engine Relay from the Engine Bay Fuse Block, the technician would pull the Engine Relay away from the Engine Bay Fuse Block, like a person would unplug a power cord from a power outlet in the wall of a home.

22.     In order for the Engine Relay to function properly, the Engine Relay Terminal must have adequate tension, so that when the Engine Relay is pushed into the Engine Relay Terminal, each of the Engine Relay's metal prongs have a tight fit and are not loose. The tension referred to herein is like the tension in a power outlet mounted on the wall in a home. A person can roughly measure the tension by feeling how much force is needed in order to plug something into the power outlet.

23.     If there is not sufficient tension in the Engine Relay Terminal, resulting in the Engine Relay not fitting tightly into the Engine Relay Terminal, this can cause the Engine Relay to be loose. This can result in intermittent or total loss of electrical power to the Class Vehicles' components which are provided with electrical energy by the Engine Relay.

24.     An intermittent or total loss of electrical power to the engine components which are provided with electrical energy from the Engine Relay will often times cause Class Vehicles' engines to stall or experience other drivability related problems.

25.     If there is a lack of tension in the Engine Relay Terminal, causing the Engine Relay to be loose, then the normal vibration in the engine bay that accompanies the Class Vehicles while being driven can cause the Engine Relay, which is already loose, to move around. This results in an intermittent loss of electrical power to the engine components which are provided with electrical energy from the Engine Relay. This results in Class Vehicles' engines stalling while being driven. Engine stalling results in the loss of acceleration, the loss of power steering, the loss of power brakes, and several other very unsafe conditions. It is undeniable that if a Class Vehicle stalls while the Class Vehicle is being driven on the roadway, the stalling creates an extremely unsafe and unacceptably dangerous condition for the occupants of the Class Vehicle, and the pedestrians and other vehicle occupants in the general vicinity.

26.     The GM Fuse blocks are mass produced, with an eye towards reducing the cost associated with the design, materials, and assembly of the fuse blocks.

27.     The functionality of a fuse block is critical to the safety of GM vehicles.  This is because fuse blocks are used to distribute electrical power from a power source to a variety of safety related components, such as air bags, different engine components, the brakes, brake lights, headlights, etc.

28.     As discussed herein, the Class Vehicles have a common defect in the Engine Bay Fuse Block which results in there being a lack of sufficient tension at the Engine Relay Terminal, resulting in Class Vehicles stalling, and experiencing other unsafe conditions such as the loss of acceleration, the loss of power steering, and the loss of power brakes.

29.     Typically, the only way that a consumer becomes aware that a fuse block terminal does not have sufficient tension is when a vehicle experiences intermittent or total loss of electrical energy. Furthermore, when this occurs, it is often times unclear what is causing the intermittent loss of energy, making it

difficult to diagnose the cause being the lack of sufficient tension at the fuse block terminal.

30.     For the herein stated reasons, it is critical that GM and other manufacturers design robust fuse blocks that are defect-free. The failure of a fuse block clearly poses a safety hazard.

## **THE FUSE BLOCK DEFECT**

31.     The Engine Bay Fuse Block for the 2007 through 2010 Saturn Outlook (a GM product), the Engine Bay Fuse Block for the 2008 through 2017 Buick Enclave, the Engine Bay Fuse Block for the 2009 through 2017 Chevrolet Traverse, the Engine Bay Fuse Block for the 2007 through 2016 Acadia, and the Engine Bay Fuse Block for the 2017 Acadia Limited have virtually the identical layout and design ("Common Fuse Block Design") as the Engine Bay Fuse Block for the Class Vehicles.

32.     Dating back prior to the sale and lease of the Class Vehicles, GM has known that the Common Fuse Block Design is defective. There is a defect in the design, materials, and assembly of the Common Fuse Block Design, wherein the fuse block terminals fail to maintain sufficient tension, resulting in relays which are mounted on fuse blocks being loose (Fuse Block Defect). When the relays which are mounted on the fuse blocks become loose, the Class Vehicles can stall, and exhibit other electrical malfunctions resulting in unsafe conditions such as the loss of acceleration, the loss of power steering, and the loss of power brakes.

33.     GM's own documents confirm that consumers have complained for years, predating the sale and lease of the Class Vehicles, that the Class Vehicles have experienced problems which are and were symptomatic of the Fuse Block Defect. GM has been aware of the Fuse Block Defect but has failed to acknowledge the Fuse Block Defect. Instead, GM has published memorandum, distributed to factory authorized repair facilities ("Service Bulletins"), which describe the symptoms of the Fuse Block Defect and how to diagnose it, and purport to offer a

repair.  But, GM does not directly acknowledge the existence of the Fuse Block Defect and, to date, has not offered an adequate or permanent solution for the problem.  Plaintiff contends that GM has taken this approach to managing the Fuse Block Defect, because this approach is less expensive and easier than resolving the Fuse Block Defect.

34.    GM had actual knowledge of issues regarding poor terminal connection in the fuse block as early as 2010.  One of GM's efforts to assist its authorized repair facilities in addressing the ongoing consumer complaints which have been symptomatic of the Fuse Block Defect was to publish Service Bulletin 09-06-03-004D on December 8, 2010 ("09-06-03 Bulletin"), entitled, "Electrical – MIL on/DTC's set by various control modules." 09-06-03 Bulletin identifies the subject as, "Intermittent No Crank/No Start, No Module Communication, MIL, Warning Lights, Vehicle Messages or DTCs Set by Various Control Modules - Diagnosing and Repairing Fretting Corrosion (Disconnect Affected Connector and Apply Dielectric Lubricant)." The Service Bulletin identifies affected models as 2011 and prior GM Passenger Cars and Trucks. The condition is described as, "Some customers may comment on any of the following conditions: An intermittent no crank/no start, Intermittent malfunction indicator lamp (MIL) illumination, Intermittent service lamp illumination, Intermittent service message(s) being displayed. The technician may determine that he is unable to duplicate the intermittent condition." The cause is described as, "This condition may be caused by a buildup of nonconductive insulating oxidized debris known as fretting corrosion, occurring between two electrical contact surfaces of the connection or connector. This may be caused by any of the following conditions: Vibration, Thermal cycling, *Poor connection/terminal retention*, Micro motion, A connector, component or wiring harness not properly secured resulting in movement. On low current signal circuits this condition may cause high resistance, resulting in *intermittent connections*. On high current power circuits this condition may cause

permanent increases in the resistance and may cause a device to become inoperative (emphasis added)."

35. Although 09-06-03 Bulletin on its face appears benign, the Service Bulletin identifies a very serious condition, and GM is admitting that it is experiencing the condition with regard to all of its vehicles. The condition is that, for all of its vehicles, GM reports that, "Some customers may comment on any of the following," after which the concern is described from a symptomatic perspective, namely what happens when there is poor connection/terminal retention. Then, GM actually acknowledges that the cause includes, "Poor connection/terminal retention." The terminal retention referenced in the Service Bulletin relates in part to the terminals on the Engine Bay Fuse block, and thus references the Common Fuse Block Design, and the Fuse Block Defect. Although from an engineering perspective, this condition reported by "Some customers" is a clear indication of a design defect, GM's resolution is to apply dielectric lubricant, and only replace parts if applying the dielectric lubricant does not resolve the problem. This is a "band aid" fix which does not resolve the underlying problem of "poor connection/terminal retention." The apparent hope is to cheaply resolve the problem during the warranty period.

36. Thus, GM has acknowledged that as early as 2010, GM was on notice that vehicles, including the vehicles which shared the same Common Fuse Block Design as the Class Vehicles, had issues with poor connection and terminal retention in the engine fuse block – precisely the same symptoms and issues experienced by Plaintiff's Vehicle as alleged herein.

37. Plaintiff contends that the condition described in the 09-06-03 Bulletin is indicative of the fact that the Common Fuse Block Design does not meet industry standards and is defective. Furthermore, as stated herein, the Fuse Block Defect is a serious defect. The 09-06-03 Bulletin specifically asserts, "Some customers may comment on any of the following conditions," then goes on to describe numerous

conditions which are symptomatic of the Fuse Block Defect which exists relating to the Common Fuse Block Design, then attributes the cause to, among other things, "Poor connection/terminal retention." Although in 2010 the Class Vehicles had not yet been built or distributed, ultimately the condition described in the 09-06-03 Bulletin relates to all of the vehicles which share the Common Fuse Block Design, including the Class Vehicles which at that time were not even built, but would when built use the Common Fuse Block Design.

38.     In February of 2013, GM published Service Bulletin PIP5094 ("PIP5094"), with the subject being, "Prior To Any Circuit Testing." The model vehicles are indicated as "2014 and prior GM cars and light duty trucks." The instructions indicated, "When testing any circuit for open or continuity resistance, it is imperative that all related terminal pin fit and tension be check when the test steps require disconnection of the connector or component, prior to any component replacement. Always use the recommended terminal test tool during these tests." The bulletin further states, "Additional SI Keywords:" after which point P1682 and P0689, among other things are listed. P1682 and P0689 are ignition fault codes relating to engine function.

39.     Basically, PIP5094 is another Service Bulletin published by GM which in layman's terms is advising technicians that if they identify certain fault codes, including P1682 and P0689, the technician should test the terminal pin fit and tension to see if there is poor pin fit or problems relating to terminal tension. The Fuse Block Defect in the Common Fuse Block Design relates to poor terminal tension. As will be discussed further herein, fault codes P1682 and P0689 relate to the ignition circuit and engine stalling. Specifically, Fault Code P0689 and Fault Code P1682 are both diagnostic codes which, among other things, can indicate poor connection/terminal retention relating to the engine controls ignition relay, which is the Engine Relay, and which is located in the Engine Bay Fuse Block. Poor connection/terminal retention relating to the Engine Relay can cause engine

1  stalling, as well as intermittent no crank/no start, intermittent malfunction indicator
2  lamp (MIL) illumination, intermittent service lamp illumination and intermittent
3  service messages being displayed.

4      40.    On February 12, 2014, GM Published Service Bulletin PIT4649C
5  ("PIT4649C"), entitled, "Electrical – No start/MIL on/DTC 1682." The bulletin
6  identifies the subject as, "Service Engine Soon MIL With DTC P1682 - Battery
7  Draw - No Start Due To Non-GM Accessories Aftermarket Product Models: 2008-
8  2014 Buick Enclave 2009-2014 Chevrolet Traverse 2007-2014 GMC Acadia 2007-
9  2010 Saturn Outlook." Although the Service Bulletin seems to identify a problem
10 relating to aftermarket non-GM accessories, the Service Bulletin only relates to the
11 vehicles which share the Common Fuse Block Design, not all GM products. The
12 condition is described as, "Some customers may comment on the Service Engine
13 Soon (SES) light coming on, or the battery going dead overnight. During diagnosis
14 technicians may find a 4.1 amp draw on the electrical system. The draw may be
15 steady or may drop down to a low milliamp reading for 1-2 seconds and then rise
16 back up near 4.1 amps." The recommendation states, "When servicing a vehicle
17 with this concern, back out pin 1 of connector 2 at the BCM and see if the draw
18 goes away. If the draw goes away, check for an aftermarket accessory (LoJack,
19 non-factory DVD system, alarm, etc.) that is improperly wired into circuit 1732."

20     41.    The reason that PIT4649C is probative of the Fuse Block Defect is that
21 the Service Bulletin only identifies the vehicles which share the Common Fuse
22 Block Design, and because the Service Bulletin specifically identifies fault code
23 P1682. Again, Fault Code P1682 is a diagnostic code which, among other things,
24 can indicate poor connection/terminal retention relating to the engine controls
25 ignition relay, which is the Engine Relay, and which is located in the Engine Bay
26 Fuse Block. Poor connection/terminal retention relating to the Engine Relay can
27 cause engine stalling, as well as intermittent no crank/no start, intermittent

28

1  malfunction indicator lamp (MIL) illumination, intermittent service lamp

2  illumination and intermittent service messages being displayed.

3       42.   PIT4649C is on its face another example of GM turning a blind eye to

4  an obvious problem.  Although PIT4649C purports to identify the root cause of

5  Fault Code P1682 as being the use of after market electronic components such as

6  alarms by consumers, PIT4649C only identifies the vehicles which share the

7  Common Fuse Block Design as being effected by the use of the after market

8  equipment. This makes no logical sense, because consumers' use of these after

9  market electronic components is not confined to the vehicles which share the

10  Common Fuse Block Design. Consumers use these after market electronic

11  components on all vehicles. Thus, PIT4649C is simply another attempt to come up

12  with a "band aid" solution to a serious defect.

13       43.   On November 26, 2018, GM published Service Bulletin PIT5643,

14  entitled, "Intermittent reduced engine power or stall with P0689 and/or P1682."

15  The effected vehicles were listed as the 2013 through 2014 Buick Enclave, the 2013

16  through 2014 Chevrolet Traverse, and the 2013 through 2014 GMC Acadia. The

17  condition was described as, "Customer may comment of intermittent Service

18  Engine Soon light on with Reduced Engine Power and/or engine stall with P0689

19  and/or P1682 stored in history." The cause was described as, "Terminal #51 at X3

20  Connector of Under Hood Fuse Block loose terminal tension with arcing corrosion

21  on terminal #51 on fuse block. Note: Engineering is still investigating the root

22  cause. The PI will be updated to a bulletin once the final root is understood."

23       44.   PIT5643 identifies the cause as being arcing corrosion. 09-06-03,

24  published on December 8, 2010, identifies the problem as being fretting corrosion.

25  Both Service Bulletins identify an ongoing problem with poor connection/terminal

26  retention, causing terminal corrosion. Bulletin 09-06-03, published in 2010

27  identifies fretting corrosion, and PIT5643, published in 2018 identifies resulting

28  arcing corrosion, both as a result of the same root cause – poor terminal retention.

45.     Terminal #51 at X3 Connector of Under Hood Fuse Block, as described in PIT5643, relates to the Engine Relay Terminal, where the Engine Relay is plugged in. As stated previously, Fault Code P0689 and Fault Code P1682, both referenced in PIT5643, are diagnostic codes which, among other things, can indicate poor connection/terminal retention relating to the engine controls ignition relay. All of the Service Bulletins referenced herein relate to the same Fuse Block Defect.

46.     On November 5, 2019, GM published Preliminary Information PIT5074M, entitled Terminal Test Probe Information/Repair. GM has published numerous other documents over the years, relating to the same matters set forth in the PIT5074M document. The model vehicle is indicated as, "All brand, all model 2005-2020." The Recommendations/Instructions indicates, "When diagnosing an intermittent electrical concern terminal tension is one of the main culprits, especially when working with very small terminals." The model year range dates back to 2005 and indicates that terminal tension is one of the main culprits in diagnosing an intermittent electrical concern. This information makes it clear that GM has been aware of terminal tension being problematic for years predating the production and distribution of the Class Vehicles.

47.     Finally, on December 12, 2019, GM published bulletin 19-NA-276, entitled, "Potential Reduced Engine Power Message Displayed and/or Engine Stall With DTCS P1682 and/or P0689 Set." The bulletin states that it pertains to the Class Vehicles. The bulletin describes the condition as, "Some customers may comment that the engine stalled and/or a reduced engine power message was displayed. The technician may find DTCs P1682 and/or P0689 stored." The bulletin describes the cause as being, "The cause of the condition may be poor terminal tension on terminal 51 in X50A fuse block Underhood X3." The correction is described as, "Following the Service Procedure below, dealers are to inspect, and if

repair is necessary, replace terminal 51 in X50A fuse block – Underhood X3, with a new terminated lead."

48.  Bulletin 19-NA-276 acknowledges that if a consumer complains of a reduced power message and/or engine stalling, along with fault codes P1682 and/or P0689, the cause may be that terminal 51 on the Fuse Block has poor tension. Terminal 51 is used as a receptacle on the fuse block for an Engine Relay. The bulletin, by virtue of its very existence, and by virtue of the fact that it applies to all of the Class Vehicles, and no other vehicles, is an acknowledgment of a classwide problem relating to the Engine Bay Fuse Block. The Bulletin is not merely a diagnostic tool. The Bulletin was published in order to diagnose and resolve a known defect regarding the Engine Bay Fuse Block. Although the Bulletin exists, consumers are expected to pay for the repairs, unless the repair is done during warranty time period.

49.  Furthermore, the poor tension described is Bulletin 19-NA-276 relates back to Bulletin 09-06-03, published on December 8, 2010, and all of the subsequent Service Bulletins. Bulletin 09-06-03 specifically states that the cause of the condition reported by consumers included poor connection/terminal retention. Bulletin 19-NA-276 provided a more advanced remedy for then Fuse Block Defect then merely applying dielectric lubricant.

50.  Finally, the conditions reported in Bulletin 09-06-03, published on December 8, 2010, of, "An intermittent no crank/no start,  intermittent malfunction indicator lamp (MIL) illumination, intermittent service lamp illumination, and intermittent service message(s) being displayed," are all symptomatic of poor connection/terminal retention at terminal 51 on the Fuse Block, resulting in engine stalling, as well as intermittent no crank/no start, intermittent malfunction indicator lamp (MIL) illumination, intermittent service lamp illumination and intermittent service messages being displayed.

51.     The interrelationship of all of the above Service Bulletins, which all point back to the December 8, 2010 Service Bulletin is undeniable.  They confirm customer complaints which GM attributed to lack of terminal tension.  They also confirm GM's knowledge of the Fuse Block Defect relating to the Class Vehicles, prior to the Class Vehicles being distributed by GM.  While GM may have sought to attribute the problem to various causes, such as after-market accessories, GM was well aware of the underlying issue and finally acknowledged it in 2019. Unfortunately, GM's solution was essentially to pack the area with dielectric lubricant, or blame the problem on after market equipment, to attempt to remedy or at least explain away the poor terminal connection. These solutions were not a permanent fix.  GM's last effort, in publishing Service Bulletin 19-NA-276, provided a more advanced remedy for the Fuse Block Defect.

52.     The reality is that GM has known about the Fuse block Defect for years, predating GM's sale and distribution of the Class Vehicles, but GM has failed to take any action to resolve the problem because, based upon a cost benefit analysis, GM has not been financially motivated to resolve the problem.

53.     To summarize, all of the Service Bulletins referenced herein relate to a common defect which relates to all of the GM vehicles which share the Common Fuse Block Design. The common defect is the Fuse Block Defect. The Fuse Block Defect is the fact that there is poor connection/terminal retention. The poor connection/terminal tension causes the Engine Relay, which is mounted in terminal 51 to be loose, causing intermittent lack of connectivity.

54.     As a result, the Class Vehicles produce Fault Code P689 and Fault Code P1682. Furthermore, the Class Vehicles experience engine stalling, as well as intermittent no crank/no start, intermittent malfunction indicator lamp (MIL) illumination, intermittent service lamp illumination and intermittent service messages being displayed. This is a serious safety defect.

55.    GM has known about the Fuse Block Defect dating back to 2010, or beforehand, prior to GM selling any of the Class Vehicles. GM acknowledges in the text of Service Bulletin 09-06-03 published in 2010 that GM is aware that its customers have complained about the problems which result from the Fuse Block Defect. Notwithstanding this knowledge, as proven by GM's own Service Bulletins, GM produced and continued to sell the Class Vehicles with the Fuse Block Defect. Furthermore, GM has not disclosed the Fuse Block Defect to consumers, and if the Fuse Block Defect manifests outside of the warranty period, GM customers are required to pay for the resulting repairs.

## GM's CONDUCT GIVES RISE TO A CLAIM FOR
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

56.    The core test of merchantability is fitness for the ordinary purpose for which such goods are used.  Such fitness is shown if the product is in safe condition and substantially free of defects.  (Defendant's actual knowledge of the defect is not required for a breach of implied warranty claim.  The foregoing allegations regarding GM's knowledge are for background and/or tolling purposes only.)

57.    The Class vehicles contain a Fuse Block Defect which causes unsafe driving conditions, as described above.  Specifically, poor connection/terminal retention relating to the Engine Relay produces Fault Code P689 and Fault Code P1682 and causes engine stalling, as well as intermittent no crank/no start, intermittent malfunction indicator lamp (MIL) illumination, intermittent service lamp illumination and intermittent service messages being displayed.

58.    Engine stalling results in the loss of acceleration, the loss of power steering, the loss of power brakes, and several other very unsafe conditions.  It is undeniable that if a Class Vehicle stalls while the Class Vehicle is being driven on the roadway, the stalling creates an extremely unsafe and unacceptably dangerous

1  condition for the occupants of the Class Vehicle, and the pedestrians and other
2  vehicle occupants in the general vicinity.

3      59.    Engine stalling (due to the Fuse Block Defect) while driving renders
4  the Class vehicles unsafe, unreliable and not free of defects.

5      60.    Further, Song-Beverly does not create a deadline for discovering latent
6  defects.  *Daniel v. Ford Motor Co.*, 806 F. 3d 1217 (9th Cir. 2015).  As alleged
7  herein, the Fuse Block Defect was a latent defect and existed within any applicable
8  warranty period.

9              **GM's CONDUCT ALSO VIOLATES**
10       **THE UNFAIR AND UNLAWFUL PRONGS OF THE UCL**

11     61.    The California Unfair Competition Law ("UCL") prohibits acts of
12  "unfair competition," including any "unlawful, unfair or fraudulent business act or
13  practice" and "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. &
14  Prof. Code § 17200.

15     62.    In acting as alleged herein and further describe below, GM has
16  violated the unfair prong of the UCL.

17     63.    GM's acts and practices are unlawful because they violate the Song-
18  Beverly Consumer Warranty Act, Cal. Civ. Code § 1791. The Song -Beverly
19  Consumer Warranty Act provides for an implied warranty of merchantability that
20  the consumer goods are "fit for the ordinary purposes for which such goods are
21  used." Cal. Civ. Code § 1791.1(a).

22     64.    GM's conduct also is illegal in that GM violated 49 C.F.R. ¶ 573.6
23  (and Federal Motor Vehicle Safety Standard "FMVSS" 573) by failing to timely
24  issue a recall of the Class Vehicles due to the Fuse Block Defect.  Section 573.6
25  states, in relevant part, that "each manufacturer shall furnish a report to the NHTSA
26  for each defect in his vehicles or in his items of original or replacement
27  equipment that he or the Administrator determines to be related to motor vehicle
28  safety, and for each noncompliance with a motor vehicle safety standard in such

1  vehicles or items of equipment which either he or the Administrator determines to
2  exist," and that "each report shall be submitted not more than 5 working days after
3  a defect in a vehicle or item of equipment has been determined to be safety related,
4  or a noncompliance with a motor vehicle safety standard has been determined to
5  exist."

6      65.    Plaintiff is not suing for injunctive relief to force a recall.  However,
7  Plaintiff is alleging that GM had a duty under the regulations to bring a recall
8  action with respect to the Fuse Block Defect as of December 12, 2019, the date of
9  Technical Service Bulletin 19-NA-276, when GM purported to address the
10 problem.  By that time, GM had determined that there was a safety related defect,
11 as evidenced by the plain reading of the Bulletin, which states, "Subject: Potential
12 reduced engine power message displayed and/or engine stall with DTCs P1682
13 and/or P0689 set", "Condition: Some customers may comment that the engine
14 stalled and/or a reduced engine power message was displayed. The technician may
15 find DTCs P1682 and/or P0689 stored", and "Cause: The cause of the condition
16 may be poor terminal tension on terminal 51 in X50A Fuse Block - underhood
17 X3." GM's failure to commence a recall at the time of the Bulletin was unlawful,
18 because it violated the C.F.R.

19              **PLAINTIFF'S EXPERIENCE WITH THE FUSE BLOCK DEFECT**

20     66.    On April 30, 2018, at 89,373 miles, Casey brought the Casey Vehicle
21 to Hoehn. The repair record indicated that Casey was complaining that while
22 driving on the freeway, after slowing down but while still in motion, the stability
23 and traction warning illuminated, with a warning of reduced power. The reason that
24 Casey brought the Casey Vehicle in for repairs was that on approximately five (5)
25 occasions, Casey had experienced loss of power. The only way she could get the
26 loss of power problem to resolve would be to pull over, turn the Casey Vehicle off,
27 let it sit, and turn it back on. The loss of power problem was accompanied by the
28 StabiliTrak light illuminating. Hoehn scanned the Casey Vehicle, and found Code

P1682. HOEHN found that the fuse block ignition bus was loose. The fuse block was reinstalled. Casey was required to pay for the repairs.

67.     On June 20, 2018, at 92,318 miles, Casey brought the Casey Vehicle back to Hoehn, complaining of the engine light coming on and off, and of the traction control message and the reduced power message being displayed. Hoehn diagnosed the fuse block as being defective and replaced the fuse block. Casey was required to pay for the replacement of the fuse block.

68.     At the time of the April 30, 2018 repair, Hoehn identified Fault Code P1682, and found that the fuse block ignition bus, also known as both Terminal 51 and the Engine Relay, was loose. This condition is the same condition described in all of the Service Bulletins namely, poor connection/terminal tension. Furthermore, the Engine Relay, identified by Hoehn as the ignition bus, was loose. Hoehn tried to reinstall the fuse block. At that time, Service Bulletin 19-NA-276 had not yet been published, so Hoehn attempted to fix the problem by resecuring the Engine Bay Fuse Block. The repair did not work, and the Casey Vehicle was brought back by Casey on June 20, 2018 with the same symptoms. As stated herein, these symptoms are serious safety problems, which can result in stalling in traffic. Casey had herself experienced the Case Vehicle stalling in traffic. Hoehn had already attempted an inexpensive fix, however the inexpensive fix of just resecuring everything did not work.

69.     As a result, during the June 20, 2018 repair, Hoehn ultimately diagnosed the Engine Bay Fuse Block as being defective and replaced the Engine Bay Fuse Block. Casey was required to pay for the repairs.

70.     All of the fuse block repairs relating to the Casey Vehicle which are referenced herein related to the Engine Bay Fuse Block, and the Fuse Block Defect.

71.     As previously stated, GM has been aware for years, even predating the manufacture and sale of Class Vehicles, that it designs, assembles, and installs defective fuse blocks. Finally, after several years of consumers complaining about

1  defects relating to the Engine Bay Fuse Block's installed in the Class Vehicles, on
2  December 12, 2019, GM published bulletin 19-NA-276.

3      72.    Casey contends that the bulletin was published in order to diagnose
4  and resolve a known defect regarding the Engine Bay Fuse Block. Although the
5  bulletin exists, consumers are expected to pay for the repairs, unless the repair is
6  done during warranty time period.

7      73.    Casey contends that the condition described in bulletin 19-NA-276 is
8  the same condition that resulted in the repair attempts to the Casey Vehicle at
9  89,373 miles and 92,318 miles.

10     74.    It is Casey's information and belief that the Fuse Block Defect is a
11 pervasive defect affecting every single Class Vehicle and posing a serious safety
12 hazard for the general public.

13     75.    Only GM had access to information about the significant risks
14 associated with the Fuse Block Defect, through GM's dealerships, pre-release
15 testing data, warranty data, customer complaint data, and replacement part sales
16 data, among other internal sources of aggregate information about the problem.

17     76.    Casey and Class Members have expended money to make repairs as a
18 result of the Fuse Block Defect, despite GM's knowledge of the defect.

19     77.    The Members of the Class have not received the value for which they
20 bargained when they purchased or leased the Class Vehicles.

21     78.    As a result of the defects, the value of the Class Vehicles has
22 diminished, including without limitation re-sale value.

23                **TOLLING OF THE STATUTE OF LIMITATIONS**

24     79.    As alleged above, evidence demonstrates that GM has known of the
25 Defect in the Class Vehicles as of December 12, 2019 and has concealed from or
26 failed to alert owners and lessees of the Class Vehicles of the full and complete
27 nature of the Fuse Block Defect.  Thus, any applicable statute of limitation was
28 tolled by GM's knowledge and concealment, and denial of the facts as alleged

1  herein, including with respect to internal Service Bulletins.

2      80.    Moreover, since the defects in the design or manufacture of the Class

3  Vehicles are latent and cannot be detected until the defect manifests itself, Casey

4  and the Class Members were not reasonably able to discover the problem until after

5  purchasing or leasing the Class Vehicles or during any applicable warranty period,

6  despite their exercise of due diligence.

7      81.    Casey and the Class Members had no realistic ability to discern that

8  the Class Vehicles were defective until after Casey and the Class Members

9  experienced the Fuse Block Defect.  Plaintiff did not experience the Fuse Block

10 Defect until April 30, 2018 when she was alerted to the problem while she was

11 driving on the freeway, as alleged above.  In addition, despite their due diligence,

12 Casey and the Class Members could not reasonably have been expected to learn or

13 discover the Fuse Block Defect until manifestation of the Fuse Block Defect.

14     82.    As alleged above, typically the only way that a consumer can become

15 aware that a fuse block terminal does not have sufficient tension is when a vehicle

16 experiences intermittent or total loss of electrical energy. Furthermore, when this

17 occurs, it is often times unclear what is causing the intermittent loss of energy,

18 making it difficult to diagnose the cause being the Fuse Block Defect or lack of

19 sufficient tension at the fuse block terminal.

20     83.    Therefore, the discovery rule is applicable to the claims asserted by

21 Casey and the Class Members.

22                        **CLASS ACTION ALLEGATIONS**

23     84.    Casey brings this lawsuit as a class action on behalf of herself and all

24 other Class Members similarly situated pursuant to Federal Rules of Civil

25 Procedure, Rule 23.  This action satisfies the numerosity, commonality, typicality,

26 adequacy, predominance, and superiority requirements of those provisions.

27     85.    The Class is defined as:

28          Class: All Persons in the State of California who purchased
            or  leased  model  year  2013  through  2017  Buick  Enclave,

model year 2013 through 2017 Chevrolet Traverse, model year 2013 through 2016 Chevrolet Acadia, and model year 2017 Chevrolet Acadia Limited vehicles ("Class Vehicles").

Excluded from the Class are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Casey reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

86.   <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

87.   <u>Typicality</u>: The claims of the representative Casey are typical of the claims of the Class in that the representative Casey, like all Class Members, purchased and/or leased a Class Vehicle designed, manufactured, and distributed by GM.  The representative Casey, like all Class Members, has been damaged by Defendants' misconduct in that she has incurred or will incur the cost of repairs relating to the Fuse Block Defect.  Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

88.     Commonality: There are numerous questions of law and fact common to Casey and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

        a.      Whether the Class Vehicles suffer from the Fuse Block Defect;

        b.      Whether the Fuse Block Defect constitutes an unreasonable safety risk;

        c.      Whether the Class Vehicles are merchantable or fit for their intended purpose;

        d.      Whether the Class Vehicles are in safe condition and substantially free of defects;

        e.      Whether a reasonable consumer would consider the Fuse Block Defect or its consequences to be material;

        f.      Whether GM's conduct violates the Song-Beverly Act and the California Unfair Competition Law;

        g.      Whether Defendants should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repair and replacement of the Class Vehicles;

        h.      Whether Class Members have suffered loss as a result of the Fuse Block Defect, and to what extent GM is obligated to compensate the Class Members for any and all losses.

89.     Adequate Representation:  Casey will fairly and adequately protect the interests of the Class Members. Casey has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Casey intends to prosecute this action vigorously.

90.     Predominance and Superiority: Casey and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class

action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## **FIRST CAUSE OF ACTION**

### Violation of Song-Beverly Consumer Warranty Act

91.    Casey hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

92.    At all relevant times hereto, Defendant was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or should have known the specific use for which the Class Vehicles were purchased.

93.    The Song-Beverly Consumer Warranty Act provides for an implied warranty of merchantability that the consumer goods are "fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a). The implied warranty of merchantability "provides for a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-96 (1995). "Such fitness is shown if the product is in safe condition and substantially free of defects . . . ." *Brand v. Hyundai Motor America*, 226 Cal. App. 4th 1538, 1546 (2014) (internal quotation marks omitted) (quoting *Mexia Rinker Boat Co., Inc*., 174 Cal. App. 4th 1297 (2009)). A defect need not render a vehicle inoperable to give rise to a claim for breach of implied warranty.

94. Defendant provided Plaintiff and Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Class Vehicles and their engines contained an inherent defect at the time of sale that causes the Class Vehicles to experience stalling and other unsafe driving conditions.

95. The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the Fuse Block Defect.

96. Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation and would not prematurely and catastrophically fail; and (ii) a warranty that the Class Vehicles would be fit for their intended use – providing safe and reliable transportation – while the Class Vehicles were being operated.

97. Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the Fuse Block Defect.

98. Defendant's actions, as described herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

99. As a direct and proximate result of Defendant's breaches of the Song-Beverly Consumer Warranty Act, Plaintiff and the Class have been damaged in an amount to be proven at trial.

///

///

## SECOND CAUSE OF ACTION

Violation of California Business and Professions Code
Cal. Bus. & Prof. Code § 17200 (the "UCL")

100.   Casey hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

101.   California Business and Professions Code section 17200, *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."  GM has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

102.   The UCL imposes strict liability.  Plaintiff need not prove that GM intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

103.   GM is a "person" as defined by Business & Professions Code § 17201.

104.   As a direct and proximate result of GM's acts and practices in violation of the UCL, Plaintiff and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

### Unlawful Prong

105.   A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct.

106.   The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

107.   GM failed to comply with the Song-Beverly Consumer Warranty Act by providing Class Vehicles that, at the time of sale and thereafter, were not fit for their ordinary and intended purpose because they suffered from the Fuse Block Defect.

108.   Defendant's actions, as described herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

109.   GM's conduct also is illegal in that GM violated 49 C.F.R. ¶ 573.6 (and Federal Motor Vehicle Safety Standard "FMVSS" 573) by failing to timely issue a recall of the Class Vehicles due to the Fuse Block Defect.  Section 573.6 states, in relevant part, that "each manufacturer shall furnish a report to the NHTSA for each defect in his vehicles or in his items of original or replacement equipment that he or the Administrator determines to be related to motor vehicle safety, and for each noncompliance with a motor vehicle safety standard in such vehicles or items of equipment which either he or the Administrator determines to exist," and that "each report shall be submitted not more than 5 working days after a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist."

110.   Plaintiff is not seeking to initiate a recall action.  However, Plaintiff is alleging that *GM* had a duty under the regulations to bring a recall action with respect to the Fuse Block Defect and that GM's failure to bring a recall is unlawful.  GM's failure to comply with this duty has caused Class Members to suffer out of pocket expenses.

111.   The remedy sought by Plaintiff is that the Court order GM to pay restitution damages to all putative Class members who have suffered out of pocket expenses as a result of GM's unlawful conduct. Specifically, Plaintiff seeks a court order for GM to reimburse all putative Class members who have incurred out of pocket expenses which would have been either avoided or reimbursed by GM if GM had complied with its legal obligations to bring a recall action relating to the Fuse Block Defect. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

## **Unfair Prong**

112.   GM's conduct violates the unfair prong of the UCL.

113.   An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided.  An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions.   GM's conduct violates all of these definitions.

114.   It is unfair for GM to fail to acknowledge the Fuse Block Defect or offer an adequate or permanent solution for the problem in an effort to minimize the amount of money that GM has to pay out in warranty claims and to increase sales of Class Vehicles when the Defect results in inherently unsafe driving conditions. It is also unfair for GM to charge customers for the resulting repairs when the Fuse Block Defect manifests outside of the warranty period.

115.   Plaintiff and Class members have suffered financial harm as a result of the Fuse Block Defect.  The financial harm includes Plaintiff and Class members experiencing reduced fuel efficiency, resulting in having to buy more gas to operate their Class Vehicles.  Furthermore, Plaintiff and Class members have been wrongfully denied warranty coverage by GM and have had to pay out of pocket for the diagnosis and repairs relating to the decreased functionality of the Fuse Block Defect.

116.   GM's unfair conduct as set forth herein is a uniform, and systematic statewide business practice.  This conduct violates California law.

117.   All of the acts and practices of GM as described above constitute "unfair" business acts and practices.  A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.  Plaintiff suffered injury in fact and a loss of money or property as a result of GM's unfair business

1  acts and practices.  It is Plaintiff's information and belief that Class members have

2  also suffered injury as a result of GM's wrongful conduct.

3      118.  GM's conduct does not benefit the Class members or competition.

4  Plaintiff and Class members could not reasonably avoid the injury each of them

5  suffered or will suffer, which injury is substantial.  GM's conduct only benefits

6  GM, by enabling GM to avoid having to pay warranty claims which should be

7  covered by implied warranty.

8      119.  The gravity of the consequences of GM's conduct as described above

9  outweighs the justification, motive or reason therefor, is immoral, unethical and

10  unscrupulous, and offends established public policy that is tethered to legislatively

11  declared policies as set forth in the laws detailed above, or is substantially injurious

12  to the public, for the reasons set forth above.

13      120.  GM's conduct offends established public policy that is tethered to

14  legislatively declared policies as set forth in the laws detailed above, including the

15  Song-Beverly Warranty Act and is substantially injurious to the public, for the

16  reasons set forth above.

17      121.  To the extent that any definition of "unfair" requires a balancing test or

18  weighing various factors, such an inquiry is fact intensive and requires a full factual

19  record as to GM's justification and motives for its conduct, and as to the impact of

20  GM's conduct on Plaintiff and Class members.

21      122.  GM's acts of unfair competition as set forth above present a continuing

22  threat and will persist and continue to do so unless and until this Court issues

23  appropriate injunctive relief. Plaintiffs also seeks attorneys' fees and costs pursuant

24  to, inter alia, C.C.P. § 1021.5.

25                                  **RELIEF REQUESTED**

26      123.  Casey, on behalf of herself, and all others similarly situated, requests

27  the Court to enter judgment against Defendants, as follows:

28

1      a.      An order certifying the proposed Class and Sub-Classes,

2   notifying the Class and Sub-Classes of this litigation and their right to recover

3   money, or order designating Casey as named representative of the Class, and an

4   order designating the Casey's Counsel as Class Counsel;

5      b.      A declaration that Defendants are financially responsible for

6   notifying all Class Members about the defective nature of the Class Vehicles;

7      c.      An award to Casey and the Class of compensatory, exemplary,

8   and statutory damages, including interest, in an amount to be proven at trial;

9      d.      An award to Casey and the Class of any repair costs they are

10  owed;

11     e.      An award of attorneys' fees and costs, as allowed by law;

12     f.      An award of pre-judgment and post-judgment interest;

13     g.      Leave to amend the Complaint to conform to the evidence

14  produced at trial; and

15     h.      Other relief as may be appropriate under the circumstances.

16

17  Dated: July 20, 2021                Respectfully submitted,

18                                      **POMERANTZ LLP**
19                                      **THE LAW OFFICE OF ROBERT L. STARR**

20                                      By: _____ /s/ Ari Y. Basser _____
21                                              Jordan L. Lurie
                                                Ari Y. Basser
22                                              Robert L. Starr

23
                                        *Attorneys for Plaintiff*
24

25

26

27

28