UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA CASEY, individually, and on behalf of a class of similarly situated individuals,<br><br>                                    Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, LLC; and DOES 1-10, inclusive,<br><br>                                    Defendants. | Case No.:  20-cv-299-WQH-MSB<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiff's Second Amended Class Action Complaint filed by Defendant General Motors, LLC. (ECF No. 38).

**I.   PROCEDURAL BACKGROUND**

On February 18, 2020, Plaintiff Rebecca Casey filed a Class Action Complaint against Defendant General Motors, LLC ("GM").  (ECF No. 1).  On September 15, 2020, Casey filed an Amended Class Action Complaint against Defendants GM and Does 1 through 10. (ECF No. 14).  On April 13, 2021, the Court granted GM's Motion to Dismiss for failure to state a claim and dismissed the Amended Class Action Complaint without prejudice.  (ECF No. 26).

On July 19, 2021, the Court granted Casey's Motion for Leave to File Second Amended Complaint.  (ECF No. 36).  On July 20, 2021, Casey filed a Second Amended

Class Action Complaint ("SAC") against Defendants GM and Does 1 through 10.  (ECF No. 37).  The SAC alleges that that Defendants violated California state law by failing to adequately acknowledge or remedy a defect located in the engine bay fuse blocks of certain vehicles manufactured by GM between 2013 and 2017.

On August 3, 2021, GM filed a Motion to Dismiss the SAC for failure to state a claim.  (ECF No. 38).  On August 24, 2021, Casey filed an Opposition to the Motion to Dismiss.  (ECF No. 39).  On August 30, 2021, GM filed a Reply.  (ECF No. 40).

## II.   ALLEGATIONS IN THE AMENDED COMPLAINT

On December 9, 2016, Casey purchased a used 2014 Buick Enclave ("Vehicle") from GM franchise dealership Hoehn Buick, GMC, Cadillac ("Hoehn") in Carlsbad, California.  The Vehicle had previously been "sold new" on October 13, 2013.  (ECF No. 37 ¶ 2).

> At the time the [ ] Vehicle was sold new, the [ ] Vehicle came with a 4-year 50,000-mile basic warranty, a 6-year 70,000-mile powertrain warranty, a 7-year 70,000-mile California emissions warranty, an 8-year 80,000-mile federal emissions warranty for certain emissions related components, and a 6-year unlimited mileage warranty for certain types of rust.

(*Id.* ¶ 2).  When Casey purchased the Vehicle, it had been driven 70,657 miles.  "Thus, at the time that Casey purchased the [ ] Vehicle, the [ ] Vehicle was still covered by portions of the original factory warranty."  (*Id.*).  Before deciding to purchase the Vehicle, "Casey reviewed the window sticker and relied on its advertisements, including details of the existence and length" of the Vehicle's factory warranty.  (*Id.* ¶ 3).

On April 30, 2018, at 89,373 miles, Casey brought the Vehicle to Hoehn for repair.  On approximately five occasions, the Vehicle lost power, and the "stability and traction warning illuminated," requiring Casey to pull over and restart the Vehicle.  (*Id.* ¶ 66).  Hoehn "identified Fault Code P1682, and found that the fuse block ignition bus, also known as both Terminal 51 and the Engine Relay, was loose."  (*Id.* ¶ 68).  Hoehn attempted to fix the problem by reinstalling and resecuring the engine bay fuse block.  "The repair did not work, and the [ ] Vehicle was brought back by Casey on June 20, 2018 with the

same symptoms." (*Id.*).  Hoehn diagnosed the engine bay fuse block as "defective" and replaced it.  (*Id.* ¶ 69).  Casey was required to pay for the repairs.

In certain GM vehicles, including Casey's Vehicle, there is an engine bay fuse block located on the passenger side under the hood.  The function of a fuse block is to control and distribute electrical energy from a vehicle's battery or generator throughout the vehicle. The engine bay fuse block provides electrical energy to different engine components using a relay.  The relay plugs into the engine bay fuse block "like a power cord plugs into a power outlet in the wall of a home."  (*Id.* ¶ 21).  To function properly, there must be adequate tension so that the relay's metal prongs fit tightly into the engine bay fuse block. If the relay is loose, the vehicle can fail to start or can stall, which can cause "the loss of acceleration, the loss of power steering, the loss of power brakes, and several other very unsafe conditions."  (*Id.* ¶ 25).  "A properly designed and constructed fuse block should last the life of a vehicle."  (*Id.* ¶ 19).

The engine bay fuse blocks for the following GM products have "virtually the identical layout and design:" 1) the 2007-2010 Saturn Outlook; 2) the 2008-2017 Buick Enclave—including Casey's Vehicle; 3) the 2009-2017 Chevrolet Traverse; 4) the 2007-2016 Chevrolet Acadia; and 5) the 2017 Chevrolet Acadia Limited (collectively, "class vehicles").  (*Id.* ¶ 31).  There is a "Fuse Block Defect" in the design, materials, and assembly of these engine bay fuse blocks "wherein the fuse block terminals fail to maintain sufficient tension, resulting in relays which are mounted on fuse blocks being loose."  (*Id.* ¶ 32).

The Fuse Block Defect "causes engine stalling, as well as intermittent no crank/no start, intermittent malfunction indicator lamp (MIL) illumination, intermittent service lamp illumination and intermittent service messages being displayed." (*Id.* ¶ 57).  "[I]f a Class Vehicle stalls while the Class Vehicle is being driven on the roadway, the stalling creates an extremely unsafe and unacceptably dangerous condition for the occupants of the Class Vehicle, and the pedestrians and other vehicle occupants in the general vicinity."  (*Id.* ¶ 58).

GM "had actual knowledge of issues regarding poor terminal connection in the fuse block as early as 2010." (*Id.* ¶ 34). A series of GM service bulletins published starting in 2010 "describe the symptoms of the Fuse Block Defect and how to diagnose it, and purport to offer a repair." (*Id.* ¶ 33). Before 2019, GM offered "band-aid solutions" to the Fuse Block Defect, including "to pack the area with dielectric lubricant, or blame the problem on after market equipment, to attempt to remedy or at least explain away the poor terminal connection." (*Id.* ¶¶ 35, 51). GM "failed to take any action to resolve the problem because, based upon a cost benefit analysis, GM has not been financially motivated to resolve the problem." (*Id.* ¶ 52).

On December 12, 2019, GM issued Technical Service Bulletin 19-NA-276. The bulletin applies to the 2013-2017 Buick Enclave, 2013-2017 Chevrolet Traverse, 2013-2016 Chevrolet Acadia, and 2017 Chevrolet Acadia Limited, which share the common fuse block design. The bulletin states: "Subject: Potential reduced engine power message displayed and/or engine stall with DTCs P1682 and/or P0689 set," "Condition: Some customers may comment that the engine stalled and/or a reduced engine power message was displayed. The technician may find DTCs P1682 and/or P0689 stored," "Cause: The cause of the condition may be poor terminal tension on terminal 51 in X50A Fuse Block – underhood X3." (*Id.* ¶ 65).

As a result of GM's conduct, Casey and other consumers have expended money for repairs, have not received the value for which they bargained when they purchased their vehicles, and have experienced a diminished resale value of their vehicles.

Casey seeks to represent the following class:

All Persons in the State of California who purchased or leased model year 2013 through 2017 Buick Enclave, model year 2013 through 2017 Chevrolet Traverse, model year 2013 through 2016 Chevrolet Acadia, and model year 2017 Chevrolet Acadia Limited vehicles ("Class Vehicles").

Excluded from the Class are: (1) Defendants, any entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned

and the Judge's staff; and (3) persons who have suffered personal injuries as
the result of the facts alleged herein.

(*Id.* ¶ 85).

Casey and the class bring the following claims against Defendants: 1) violation of
the California Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ.
Code § 1790, *et seq.*; and 2) violation of the California Unfair Competition Law ("UCL"),
Cal. Civ. Code § 17200, *et seq.* Casey and class seek injunctive relief, declaratory relief,
damages, and attorneys' fees and costs.

## III.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure
to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to
state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim
showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under
Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of
sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular
Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
"A claim has facial plausibility when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555
(alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as
true allegations that are merely conclusory, unwarranted deductions of fact, or
unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.
2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual

content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## IV.   DISCUSSION[1]

GM contends that "Plaintiff's Song-Beverly claim fails as a matter of law because she purchased her [V]ehicle used." (ECF No. 38-1 at 15). GM contends that even if the Song-Beverly Act was applicable, Casey's Vehicle was merchantable due to "extensive trouble-free use" and because repairs "solved" the Vehicle's problems. (*Id.* at 18). GM contends that its actions do not fall within the "unlawful" UCL prong because Casey's claim is not premised on any viable independent legal violation. GM contends that Casey's "unfair" prong UCL claim should be dismissed because a Vehicle part that "functions throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers." (*Id.* at 23). GM contends that Casey's UCL claim should be dismissed because Casey has an adequate remedy at law.

Casey contends that the Song-Beverly Act applies because the Vehicle was still partially covered by the original factory warranty. Casey contends that her Vehicle is not considered a used vehicle because she had previously leased the Vehicle and subsequently purchased the Vehicle pursuant to an option in her lease. Casey contends that the Vehicle was not merchantable because the "inherent design flaw" in a part alleged to last the life of the Vehicle "cause[d] the [V]ehicle[] to fail during [its] useful life" and rendered the Vehicle "not fit for ordinary use." (ECF No. 39 at 15-16). Casey contends that GM's conduct was unlawful under the UCL because GM violated the Song-Beverly Act and federal regulations issued by the National Highway Traffic Safety Administration

---

[1] GM requests that the Court take judicial notice of eight documents filed concurrently with its Motion to Dismiss. (ECF No. 38-2). Casey requests that the Court take judicial notice of one document filed concurrently with her Opposition to the Motion to Dismiss. (ECF No. 39-1). Judicial notice of all requested documents is denied, as judicial notice of the documents is unnecessary to this Order.

("NHTSA").  Casey contends that GM's conduct was unfair under the UCL.  Casey contends that she is permitted to plead her equitable UCL claim in the alternative.

California's Song-Beverly Act provides an implied warranty that requires goods to be "fit for the ordinary purposes for which such goods are used."  Cal. Civ. Code § 1791.1(a)(2).  To be fit for its ordinary purpose, a vehicle must be "safe," "reliable," and "substantially free from defects."  *Goldstein v. Gen. Motors LLC*, 445 F. Supp. 3d 1000, 1016 (S.D. Cal. 2020) (collecting cases).

The SAC alleges that Casey "purchased a used 2014 Buick Enclave . . . from Hoehn Buick, GMC, Cadillac . . . ."  (ECF No. 37 ¶ 1).  The SAC alleges that the Vehicle had previously been "sold new."  (*Id.* ¶ 2).  The SAC alleges that "[a]t the time of purchase, the [ ] Vehicle had already been driven 70,657 miles."  (*Id.* ¶ 1).  The SAC alleges that "at the time that Casey purchased the [ ] Vehicle, the [ ] Vehicle was still covered by portions of the original factory warranty," namely, "an 8-year 80,000-mile federal emissions warranty for certain emissions related components"  (*Id.* ¶ 2).  The SAC alleges that the Class Vehicles "contained an inherent defect at the time of sale that causes the Class Vehicles to experience stalling and other unsafe driving conditions."  (*Id.* ¶ 94).  The SAC alleges that, because of the defect, GM "breached the implied warranty that the Class Vehicles were of merchantable quality and fit for [ ] use in violation of California Civil Code §§ 1792 and 1791.1."  (*Id.* ¶ 98).

The Song-Beverly Act does not generally impose implied warranty obligations on manufacturers in sales of used vehicles.  *See* Cal. Civ. Code § 1795.5 ("It shall be the obligation of the distributor or retail seller making express warranties with respect to used consumer goods (and not the original manufacturer, distributor, or retail seller making express warranties with respect to such goods when new) . . . ."); *see also Potts v. Ford Motor Co.*, No. 21-cv-256-BEN-BGS, 2021 WL 3112471, at *4 (S.D. Cal. July 21, 2021); *Goldstein*, 445 F. Supp. 3d at 1018 ("[T]he distributor or retailer is liable for the sale of used products, not the original product manufacturer.").  *But see Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 340 (2019) (making an exception where the manufacturer

offers a *new* express warranty at the time the used vehicle is resold because the manufacturer in such a scenario "acts in the capacity of a retailer"). This is true even where a vehicle is resold with a balance remaining on the *original* express manufacturer warranty. *See Victorino v. FCA US LLC*, 326 F.R.D. 282, 301 (S.D. Cal. 2018) (declining to impose an implied warranty under such circumstances and distinguishing *Jensen v. BMW of N. Am.*, 35 Cal. App. 4th 112 (1995), on the basis that, in *Jensen*, the plaintiff sought relief under an express warranty, not an implied warranty). The SAC's allegation that Casey purchased a used Vehicle from an authorized dealership that was still partially covered by the balance of GM's original manufacturer warranty fails to establish that GM owed any implied warranty obligations to Casey.[2] GM's Motion to Dismiss Casey's Song-Beverly Act claim is granted.

"The UCL broadly prohibits 'unfair competition,' defined as 'any unlawful, unfair or fraudulent business practice.'" *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (quoting Cal. Bus. & Prof. Code § 17200). "Because the statute is written in the disjunctive, it is violated if a defendant violates any of the unlawful, unfair or fraudulent prongs." *Id.* (citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012)).[3]

The "unlawful" prong of the UCL "'borrows violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093,

---

[2] The Court does not address Casey's argument that the Song-Beverly Act applies because the Vehicle was purchased pursuant to an option in a prior lease, as there are no facts concerning any prior lease alleged in the SAC. *See Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("'[N]ew' allegations contained in [Plaintiffs'] opposition motion, however, are irrelevant for Rule 12(b)(6) purposes.").

[3] Casey does not contend in her Opposition or allege in the SAC that GM has violated the fraudulent prong of the UCL.

8

1103 (1996)). "[V]irtually any state, federal, or local law can serve as the predicate." *Friedman*, 855 F.3d at 1052.

The SAC alleges that GM's conduct is independently actionable under the "unlawful" prong of the UCL due to violations of two predicate laws. The first alleged predicate is GM's violation of the Song-Beverly Act. However, the Song-Beverly Act cannot serve as a predicate for Casey's UCL claim because the Court has concluded that the SAC does not state a claim for relief under the Song-Beverly Act.

The SAC also alleges that GM's violation of a regulation issued by the NHTSA— "49 C.F.R. [§] 573.6 (and Federal Motor Vehicle Safety Standard 'FMVSS' 573)"—serves as a predicate for Casey's UCL claim. (ECF No. 37 ¶ 64). That regulation requires vehicle manufacturers to "furnish a report to the NHTSA for each defect in [their] vehicles or in [their] items of original or replacement equipment that [they] or the Administrator determines to be related to motor vehicle safety, and for each noncompliance with a motor vehicle safety standard in such vehicles or items of equipment which either [they] or the Administrator determines to exist." 49 C.F.R. § 573.6.

The SAC alleges that GM breached "a duty under the regulations" because "GM [ ] determined that there was a safety related defect" and failed to act. (ECF No. 37 ¶ 65). The SAC alleges that GM's determination of a safety related defect is evidenced by a "plain reading" of Technical Service Bulletin 19-NA-276. (*Id.*). The SAC alleges that the bulletin states: "Subject: Potential reduced engine power message displayed and/or engine stall with DTCs P1682 and/or P0689 set," "Condition: Some customers may comment that the engine stalled and/or a reduced engine power message was displayed. The technician may find DTCs P1682 and/or P0689 stored," "Cause: The cause of the condition may be poor terminal tension on terminal 51 in X50A Fuse Block – underhood X3." (*Id.*).

The United States Code for Motor Vehicle Safety defines motor vehicle safety as

> the performance of a motor vehicle or motor vehicle equipment in a way that
> protects the public against unreasonable risk of accidents occurring because
> of the design, construction, or performance of a motor vehicle, and against

1
2

> unreasonable risk of death or injury in an accident, and includes nonoperational safety of a motor vehicle.

3

49 U.S.C. § 30102(a)(9).  In assessing whether a vehicle condition that results in engine

4

stalling poses an "unreasonable risk," *id.*, and is thus "related to motor vehicle safety," 49

5

C.F.R. § 573.6, the NHTSA considers several factors, including

6
7
8

> the speeds at which stalling may occur, the ability of the driver to restart the vehicle, the warning available to the driver prior to stalling, the effects of engine stall on vehicle controllability, when and where the stalling will occur and the effects of the condition on other safety systems of the vehicle.

9

Denial of Motor Vehicle Defect Petition, 80 Fed. Reg. 18935-01 (Apr. 8, 2015).  The text

10

of Technical Service Bulletin 19-NA-276 does not adequately support an inference that

11

GM determined that the alleged defect related to motor vehicle safety.  Absent such a

12

determination by GM or the Administrator, GM had no duty to act under 49 C.F.R. § 573.6.

13

GM's Motion to Dismiss Casey's "unlawful" UCL claim is granted.

14

The "unfair" prong of the UCL prohibits "practice[s] [that] may be deemed unfair

15

even if not specifically proscribed by some other law."  *Cel-Tech Commc'ns*, 20 Cal. 4th

16

at 180.

17
18
19
20
21

> Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer.

22
23
24
25
26
27
28

*Doe v. CVS Pharm, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020), *reh'g en banc denied* (Jan. 15, 2021); *cert. granted, in part, on other grounds*, *CVS Pharm., Inc. v. Doe*, 2021 U.S. LEXIS 3572 (July 2, 2021). Determining whether a defendant's conduct was unfair "raises of questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations." *Friedman*, 855 F.3d at 1055 (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)).

The SAC alleges that "[i]t is unfair for GM to fail to acknowledge the Fuse Block Defect or offer an adequate or permanent solution for the problem . . . ."  (ECF No. 37 ¶ 114).  The SAC alleges that "[i]t is also unfair for GM to charge customers for the resulting repairs . . . ." (*Id.*).  The SAC alleges that Casey suffered financial harm, including reduced fuel efficiency "resulting in having to buy more gas" and having to "pay out of pocket for the diagnosis and repairs" of the alleged defect.  (*Id.* ¶ 115).  The SAC alleges that GM's conduct is tethered to legislative policies declared in the Song-Beverly Act and in NHTSA regulations.

GM's alleged conduct is not "tethered to any underlying constitutional, statutory or regulatory provision," *Doe*, 982 F.3d at 1214-15, because the Court has already concluded that the SAC fails to allege facts to support an inference that GM's conduct violated the Song-Beverly Act or NHTSA regulations.  GM's failure to acknowledge or remedy a defect that occurred outside any applicable express warranty period cannot plausibly be characterized as "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026-27 (9th Cir. 2008) ("[T]he failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006)).  The SAC alleges that "the gravity of the consequences of GM's conduct . . . outweighs the justifications . . . ." (ECF No. 37 ¶ 119).  The SAC alleges that weighing the relevant factors "is fact intensive and requires a full factual record." (*Id.*).  These conclusory allegations are insufficient to support a UCL "unfair" prong claim. *See Doe*, 982 F.3d at 1215 (affirming dismissal of UCL "unfair" prong claim because "conclusory recitation of one of the UCL's legal standards does not clarify what conduct [the plaintiffs] claim is unfair, or on what allegations in the complaint [the plaintiffs] rely for this claim").  GM's Motion to Dismiss the "unfair" UCL claim is granted.

## V.   CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss Plaintiff's Second Amended Class Action Complaint filed by Defendant General Motors, LLC (ECF No. 38) is granted. The Second Amended Class Action Complaint (ECF No. 37) is dismissed without prejudice.[4]   No later than thirty (30) days from the date of this Order, Plaintiff Rebecca Casey may file any motion for leave to amend pursuant to Civil Local Rules 7.1 and 15.1(c).  If no motion is filed, the case will be closed.

Dated:  November 19, 2021

Hon. William Q. Hayes
United States District Court

---

[4] GM contends that the SAC should be dismissed with prejudice.  Although Casey does not dispute this contention in her Opposition, dismissal with prejudice is inappropriate because the Court cannot conclude that further amendment would be futile at this point in time.